**Richard C. WHETSTONE, Respondent,**

v.

**HOSSFELD MANUFACTURING COMPANY, Appellant.**

**No. C9-89-1188.**

Court of Appeals of Minnesota.

Dec. 5, 1989.

Review Granted Jan. 12, 1990.

John R. Dorgan, Frommelt & Eide, Minneapolis, for respondent.

Richard H. Darby, Darby, Delano & Price, Winona, for appellant.

Heard, considered and decided by FORSBERG, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

After a grant of partial summary judgment, appellant Hossfeld Manufacturing Company was ordered to pay respondent shareholder Whetstone, who owned 36% of Hossfeld, the value of his shares on the grounds that amendments eliminating the 30% veto power entitled Whetstone to assert the rights of a dissenting shareholder. We reverse.

## FACTS

Appellant Hossfeld corporation was incorporated in 1947 pursuant to Minn.Stat. Chapter 301. Its articles and bylaws provided in relevant part that:

1. Any holder of at least 30% of the shares could veto the election of a director, unless the candidate also held at least 30% of the shares; and

2. Any holder of at least 30% of the shares could veto the election or appointment of officers and managers, unless the candidate also held at least 30% of the shares.

Respondent Whetstone is one of Hossfeld corporation's three directors and owns 36% of its stock. As a director, he voted against eliminating these provisions from the bylaws; as a shareholder, he voted against eliminating them from the articles. When the bylaws and articles were amended notwithstanding his opposition, he invoked the right of a dissenting shareholder.

## ISSUES

1. Did the amendments eliminating the 30% veto power from the articles of incorporation entitle respondent to assert the rights of a dissenting shareholder?

2. Were the amendments eliminating the 30% veto power in a corporation having only one class of shares necessary to conform the articles to Minn.Stat. §§ 302A.401 and 302A.021?

## ANALYSIS

1. The pertinent statute, Rights of Dissenting Shareholders, Minn.Stat. § 302A.471, subd. 1 (1988), reads:

A shareholder of a corporation may dissent from, and obtain payment for the fair value of the shareholder's shares in the event of, any of the following corporate actions:

(a) An amendment of the articles that materially and adversely affects the rights or preferences of the shares of the dissenting shareholder in that it:

(1) alters or abolishes a preferential right of the shares; [or] * * *

(4) excludes or limits the right of a shareholder to vote on a matter, or to cumulate votes * * *.

Respondent asserts that he is entitled to dissent and receive the value of his shares because the amendments to which he objects conform to (1) or (4) above.[1]

The amendment to the articles and by-laws of Hossfeld corporation cannot be held to "alter or abolish a preferential right of the shares" in accord with subdivision (1) because none of the shares in the Hossfeld corporation has any preferential rights. The terms "preference," "preferred," and "preferential" are terms of art in the corporate context; shares are "preferred" as opposed to "common," and holders of preferred shares are entitled to receive dividends before holders of common shares. Case law supports this:

By general definition preferred stock is stock entitled to a preference over other kinds of stock in the payment of dividends.

*Sherman v. Pepin Pickling Co.,* 230 Minn. 87, 92, 41 N.W.2d 571, 575 (1950) (quoting *Booth v. Union Fibre Co.,* 137 Minn. 7, 8, 162 N.W. 677, 677 (1917)).

■ By statute, preferred stock can exist only if the articles of the corporation so indicate; otherwise all stock is common.

All the shares of a corporation:

(a) Shall be of one class and one series, unless the articles establish, or authorize the board to establish, more than one class or series;

(b) Shall be common shares entitled to vote and shall have equal rights and preferences in all matters not otherwise provided for by the board * * *.

Minn.Stat. § 302A.401, subd. 2 (1988). Article V of Hossfeld corporation has not been amended; it reads: "There shall be but one class of stock, and that non-assessable common * * *." Since all Hossfeld shares are declared by the articles to be common, there are no shares with preferential rights, and therefore no rights were "altered or abolished" by the amendment eliminating the 30% veto power. Respondent cannot use subsection (1) as the basis for his claim to dissenting shareholder's rights.

Nor did the amendment "exclude or limit the right of a shareholder to vote on a matter, or to cumulate votes," as specified in subsection (4). Respondent equates the right to veto with the right to vote, but

---

1. There is no Minnesota case law which supports expanding this very explicit statute. The relevant case cited in Model Business Corporations Act Annotated expands the right to dissent only as a means of compensating a shareholder for the taking of his property. *Orchard v. Covelli,* 590 F.Supp. 1548, 1560 (W.D.Pa.1984), *aff'd* 802 F.2d 448 (3rd Cir.1988). The dissent cites the comments to this statute, which explain that its purpose is to allow investors to escape when the nature of their investment rights is altered by a decision of the majority. We read "investment rights" to signify those rights pertaining to the investment of funds, i.e. to receive dividends with or before others, to redeem the shares, and

there is no authority to support this view.[2] The Digest to A.L.R. 3rd and 4th Federal includes numerous annotations on Shareholders' Rights Generally, Minority Shareholders, and Voting: nowhere is the right to veto mentioned. Corporations are treated extensively in C.J.S.; Members and Stockholder's rights and liabilities as to the corporation are discussed at 18 C.J.S. §§ 475–538, while member and stockholder meetings are analyzed at 18 C.J.S. §§ 539–558. Again, there is no reference to the right to veto. *Words and Phrases*, in eight pages of entries regarding the term "Vote," never mentions veto in the corporate or any other context. Entries on "Veto" discuss only the power of governmental executive officers.

■ Respondent's veto power is not a voting right. As a 36% shareholder, he is still entitled to vote his 36% on any matter on which shareholders may vote, and to cumulate votes with other shareholders. His voting right has not been excluded or limited by the amendment. Respondent has lost only the power to veto the votes of others, and this does not entitle him to assert the rights of a dissenting shareholder.

Nor is the right to veto a property right, as respondent argues when he abbreviates section 302A.471, subd. 1 by reading only subsection (a) and basing his dissent on the fact that the amendment "materially and adversely affects the rights * * * of the dissenting shareholder." Respondent's view that the right to veto is a property right given to him by the articles of incorporation directly contravenes the Official Comment to the Model Business Corporations Act which states:

Section 10.01(b) [regarding the amendment of articles] restates explicitly the policy embodied in earlier versions of the Model Act and in all modern state corporation statutes, that a shareholder "does not have a vested property right" in any provision of the articles of incorporation * * *.

Section 10.01(b) should be construed liberally and without qualification or restriction to achieve the fundamental purpose of this chapter by permitting corporate adjustment and change by majority vote. Section 10.01(b) rejects decisions by a few courts that have applied a "vested rights" or "property right" doctrine to restrict or invalidate amendments to articles of incorporation because they modified particular rights conferred on shareholders by the original articles of incorporation. These holdings are rejected because their effect often is to create a tyranny of the minority * * *.

The 30% veto power does create a "tyranny of the minority" in that the choice of 70% of the stockholders can be nullified by an individual holding only 30% of the shares. The amendments eliminating the veto power enabled Hossfeld corporation to choose its directors, officers and managers by majority vote, in accord with the intent of the Minnesota Business Corporations Act.

2. The amendments to the articles and bylaws of Hossfeld corporation were necessary to conform them with the Minnesota Business Corporations Act, which states that all shares in a Minnesota corporation are of one class, with equal rights and preferences, unless the articles say otherwise. *See* Minn.Stat. § 302A.401, subd. 2. "Class" is defined in Minn.Stat. § 302A.011, subd. 6 (1988) as:

a category of shares that differs in designation or one or more rights or preferences from another category of shares of the corporation.

Article V of the Hossfeld corporation mandates that:

[t]here shall be but one class of stock, and that non-assessable common, and the voting power shall be one (1) vote for each share of stock.

It follows logically that if Hossfeld has only one class, its shares do not differ in rights or preferences. This reflects Minn. Stat. § 302A.401, subd. 2.

to maintain a percentage of ownership, but not the right to veto elections.

2. In any event, since shareholders have no power to vote for officers and managers, their veto power can hardly be construed as a voting right.

Hossfeld corporation, along with every other Minnesota corporation, has been subject to chapter 302A since 1984:

A corporation in existence on January 1, 1984, and incorporated under another statute of this state * * * that has not elected before January 1, 1984, to become subject to this chapter, becomes governed by this chapter * * * on January 1, 1984, as fully as though the corporation had been incorporated under this chapter * * *. All provisions of the articles and bylaws of the corporation that may be included in the articles or bylaws under this chapter remain in effect. All provisions of the articles and bylaws of the corporation that are inconsistent with this chapter cease to be effective on January 1, 1984. Any provisions required by this chapter to be contained in the articles that do not appear in the articles are read into them as a matter of law.

Minn.Stat. § 302A.021, subd. 7 (1988). By the operation of this subdivision, the provisions of chapter 302A have in fact governed Hossfeld corporation regardless of any amendments to its articles and bylaws, and any articles or bylaws inconsistent with the chapter have been ineffective.

■ Since the chapter mandates that shares of the same class must have equal rights, and all Hossfeld shares are of the same class, giving a veto power only to shares owned in blocks of at least 30% is inconsistent with the chapter, and has been ineffective since January 1, 1984. Consequently, amendments eliminating the 30% veto power were no more than a pro forma realignment of the articles with the statute.

## DECISION

The trial court erred in concluding that respondent was entitled to assert the rights of a dissenting shareholder, since the amendments Hossfeld corporation made to eliminate the 30% veto power do not by statute entitle shareholders to dissent, and since the veto power was itself a statutory violation. Respondent cannot base his rights as a dissenting shareholder on amendments other than those described in the statute, or on amendments necessary to conform the articles to the law.

Reversed.

KALITOWSKI, J., dissents.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. The unique facts of this case reflect a situation in which the dissenting shareholder rights under Minn. Stat. § 302A.471 are most applicable. Appellant Hossfeld company is a closely held corporation. Respondent owned 36% of the outstanding shares while Ralph Hossfeld, the company president, and his wife owned 51% of the shares. The amendment of the articles and bylaws to remove the veto power essentially left the Hossfelds in control of the corporation. The trial judge correctly recognized in its order that "the facts presented provide the classic example meant to be rectified when the legislature passed the subject statute."

Minn.Stat. § 302A.471, subd. 1(a)(1) (1988) allows a shareholder to obtain payment for the full value of his shares when the corporate articles are amended in such a way as to materially and adversely affect the rights or preferences of the shareholder in that it alters or abolishes a preferential right of the shares. The comments to this statute explain:

The right of a dissenter to obtain payment for his shares is extended to embrace impairment of share rights by amendment for reasons similar to those which justify the grant of dissenters' rights in cases of merger, consolidation and transfer of assets. The grant of these rights increases the security of investors by allowing them to escape when the nature of their investment rights is fundamentally altered. The grant also enhances the freedom of the majority to make changes, because the existence of an escape hatch makes fair and reasonable a change which might be unfair if it forced a fundamental mutation of rights upon unwilling investors without giving them a reasonable alternative.

Minn.Stat.Ann. § 302A.471 Reporter's Notes—1981. Respondent invested in the stock when he had the ability to veto ap-

pointments of directors, officers and managers. The amendment of the articles and bylaws, rather than the statutory amendments, fundamentally altered the stockholder's rights. Therefore, I would affirm the trial court.