Richard C. WHETSTONE,
Petitioner, Appellant,

v.

HOSSFELD MANUFACTURING
COMPANY, Respondent.

No. C9–89–1188.

Supreme Court of Minnesota.

June 22, 1990.

John R. Dorgan, Frommelt and Eide, Ltd., Minneapolis, for appellant.

Richard H. Darby, Darby, Delano & Price, Winona, for respondent.

YETKA, Justice.

This case involves the question of whether certain amendments to the articles of

incorporation and bylaws of a closely held corporation entitle a minority shareholder, under Minn.Stat. § 302A.471 (1988), to dissent from these changes and obtain payment for the fair value of the shareholder's shares. The trial court found in favor of the minority shareholder, but was reversed by the court of appeals. We reverse the latter and reinstate the trial court's decision.

Appellant is a shareholder in a Minnesota closely held corporation. In 1988, the president of the corporation initiated amendments to the corporation's articles of incorporation and bylaws which resulted in three basic changes in the operation of the corporation: (1) deleted provisions requiring the approval of shareholders owning at least 30 percent of the corporation's shares for certain major decisions; (2) reduced the number of directors from a maximum of five to a maximum of three; and (3) deleted the 75 percent majority voting requirement needed to amend the bylaws.

Appellant dissented from the corporation's amendment of the articles and bylaws, but the corporation refused to purchase his shares. Shortly thereafter, appellant commenced this action. No claim is made that appellant failed to follow the statutory procedure for asserting his right to dissent. The trial court granted summary judgment in favor of appellant.

The court of appeals reversed, holding that elimination of veto powers is not among the events which entitle dissenting shareholders to receive the fair value of their shares. The majority reasoned that, since the corporation's shares are all of the same class, giving veto powers is inconsistent with the act and is, therefore, invalid. This appeal followed.

Respondent corporation is headquartered in Winona, Minnesota, and is engaged in the business of manufacturing and marketing machinery, tools, and equipment. Respondent was initially incorporated in 1947 with three shareholders. At the time this action was commenced, there were 13 shareholders. Appellant owns 36 percent of the corporation's shares. The president of the corporation and his wife, individually and as joint tenants, own 50.93 percent of the corporation's shares.

Article V of the corporation's articles of incorporation and article II, section 1 of the bylaws reserve the following power in certain shareholders with respect to electing directors:

> No person shall be elected a member of the Board of Directors without the written consent of every stockholder of record who owns 30% or more of the issued and outstanding stock of the corporation, unless such person shall be the owner of record of at least 30% of the outstanding stock of the corporation.

With respect to electing or appointing officers and employees, article VIII of the articles of incorporation provided the following:

> No person shall be elected or appointed an officer, assistant officer, manager, or agent of the corporation without the written consent of every stockholder of record who owns 30% or more of the issued and outstanding stock of the corporation, unless such person shall be the owner of record of at least 30% of the outstanding stock of the corporation.

Article III, section 6 of the bylaws of the corporation provided the following for the appointment of a manager of the corporation:

> The Board of Directors shall by a majority vote appoint a Manager of the corporation, and give such Manager full control and direction of the operations of the business, manufacturing and sales, under the control of the Board of Directors. No person, however, shall be elected or appointed such assistant officer, manager or agent of the corporation without the written consent of every stockholder of record who owns 30% or more of the issued and outstanding stock of the corporation, unless such person shall be the owner of record of at least 30% of the outstanding stock of the corporation.

Finally, article V, section 1 of the bylaws provided as follows: "The By-Laws of the corporation shall be subject to alteration, amendment or repeal by a seventy-five (75%) vote of all shareholders, at any regu-

lar meeting, or special meeting called therefor." At a special meeting of the Board of Directors on July 23, 1988, the Board of Directors voted, by a 2–1 vote (appellant cast the sole dissenting vote), to amend the bylaws so as to eliminate the above provisions. On August 6, 1988, at a special meeting of the stockholders, the articles were amended to eliminate the above veto powers.

■ The first issue presented in this appeal is whether amendments to the articles of incorporation and bylaws of a closely held corporation which delete certain powers of a minority shareholder, reduce the maximum number of directors from five to three, and reduce the 75 percent majority voting requirement for certain actions "exclud[e] or limi[t] the right of a shareholder to vote on a matter, or to cumulate votes" within the meaning of Minn.Stat. § 302A.471, subd. 1(a)(4) such that the shareholder is entitled to dissent from the amendments and obtain payment for the fair value of the shareholder's shares.

■ The decision of the court of appeals was based on the majority's construction of Minn.Stat. § 302A.471, subd. 1 (1988). Statutory construction is a question of law and is subject to *de novo* review on appeal. *Doe v. Minnesota State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989).

Minn.Stat. § 302A.471, subd. 1 (1988) provides in pertinent part as follows:

A shareholder of a corporation may dissent from, and obtain payment for the fair value of the shareholder's shares in the event of, any of the following corporate actions:

(a) An amendment of the articles that materially and adversely affects the rights or preferences of the shares of the dissenting shareholder in that it:

\*  \*  \*  \*  \*  \*

(4) excludes or limits the right of a shareholder to vote on a matter, or to cumulate votes \* \* \*.

Appellant argues that the power to prohibit certain corporate actions is a right of the shareholder to vote on a matter within the meaning of the above statute. The court of appeals rejected this argument and concluded that appellant's stock preference powers were not a voting right. *Whetstone v. Hossfeld Mfg. Co.*, 448 N.W.2d 536, 539 (Minn.App.1989). The court of appeals also concluded that a preferential stock power was "inconsistent" with Minn. Stat. ch. 302A because it could result in a "tyranny of the minority." *Id.* at 539–40.

■ The court of appeals majority, however, failed to recognize the significance of the fact that respondent corporation is a closely held corporation.[1] Closely held corporations are *sui generis*. *Westland Capital Corp. v. Lucht Eng'g Inc.*, 308 N.W.2d 709, 712 (Minn.1981) (describing a close corporation as "a partnership in corporate guise"). In *Westland*, this court observed that minority shareholders in a closely held corporation are vulnerable because the majority can deny them income by refusing to employ them or pay dividends. *Id.* The *Westland* court also noted that, because legal remedies for majority shareholder abuse were somewhat ineffective, the practice of entering into shareholder agreements in the form of charter provisions, bylaws or contracts *inter se* developed. *Id.* In commenting on these agreements, the *Westland* court stated:

These agreements usually are demanded by investors at the time they buy into the corporation. *Their most common features are the right to limit or veto* salary increases and employment decisions and the right to some control over dividend declarations.

*Westland*, 308 N.W.2d at 712 (emphasis added).

The *Westland* court did not suggest in any way that shareholder veto arrangements were void for public policy or otherwise invalid. On the contrary, the court noted that the trend has long been to uphold them and that the "new" Minnesota

---

1. Minn.Stat. § 302A.011, subd. 6a (1988) defines "closely held corporation" as a corporation which does not have more than 35 shareholders.

Business Corporation Act recognizes these agreements as lawful means for control of corporate affairs. *Id.* Moreover, Minn. Stat. § 302A.457, subd. 1 (1988) (shareholder control agreements) specifically authorizes agreements "relating to the control of any phase of the business and affairs of the corporation." Thus, the court of appeals was clearly mistaken in concluding that preferential stock arrangements were somehow inconsistent with chapter 302A.

The phrase "excludes or limits the right of a shareholder to vote" is somewhat ambiguous. It could refer to the basic eligibility to vote (*i.e.*, the difference between voting stock and non-voting stock) or it could refer to the operative effect of the shareholder's right to vote. The language "or limits" suggests that the latter construction is more likely because if the phrase were directed only at basic eligibility, it would not make sense to mention limitations. A shareholder is either eligible to vote or not. The general comment to Minn.Stat. § 302A.471, subd. 1 states that this provision is essentially a Model Act provision and quotes the following portion of the Model Act comment regarding the reasons for permitting dissenters' rights in the situations set forth in the statute:

> The grant of these rights increases the security of investors by allowing them to escape when the nature of their investment rights is fundamentally altered. The grant also enhances the freedom of the majority to make changes, because the existence of an escape hatch makes fair and reasonable a change which might be unfair if it forced a fundamental mutation of rights upon unwilling investors without giving them a reasonable alternative.

Minn.Stat.Ann. § 302A.471 at 509, Reporter's Notes (1981) (West 1985).

The dissent in the court of appeals' decision correctly interpreted the above com-

ment in reaching the conclusion that the amendments in question fundamentally altered appellant's rights such that he is entitled to be paid the fair value of his shares. *Whetstone,* 448 N.W.2d at 540–41. In response to the dissent's reliance on the statute's comment, the majority noted that:

> We read "investment rights" [quoting the comment] to signify those rights pertaining to the investment of funds, i.e. to receive dividends with or before others, to redeem the shares, and to maintain a percentage of ownership, but not the right to veto elections."

*Whetstone,* 448 N.W.2d at 538 n. 1. The majority's interpretation of the comment is inconsistent with Minn.Stat. § 302A.457, the *Westland* court's analysis of these agreements, and the analysis of various commentators.

As indicated in *Westland,* the use of veto power arrangements and supermajority[2] voting requirements have long been recognized as a means of providing a minority shareholder in a closely held corporation protection against prejudicial conduct by the majority shareholder(s). *See* 1 F. O'Neal & R. Thompson, *O'Neal's Close Corporations* § 3.57, 4.02 (3d ed.1987) (*cited with approval* in *Westland*); Hornstein, *Stockholders' Agreements in the Closely Held Corporation,* 59 Yale L.J. 1040, 1041–46 (1950). Investors in closely held corporations frequently seek to control the election of directors, officers, and managers because the investors' return on investment often comes only in the form of compensation for serving as directors or officers rather than from dividends on stock. *Westland,* 308 N.W.2d at 712; O'Neal, *supra,* at § 4.03. Accordingly, the investors are typically most interested in being able to prevent those in control of the corporation from removing them as directors or officers so as to cut off this

---

**2.** The term "supermajority" refers to a method of providing veto power by requiring approval of a high percentage of shares entitled to vote and setting that vote requirement at a level which cannot be obtained without the votes of shareholders who desire the veto. *See* 1 F. O'Neal & R. Thompson, *O'Neal's Close Corporations* § 4.07 (3d ed. 1987). A provision requir-

ing an affirmative vote of holders of 75 percent of the voting shares outstanding gives a veto power to any shareholder or group of shareholders holding more than 25 percent of the shares. *Id.* In the present case, a 75 percent majority shareholder voting requirement was necessary for approval of certain actions before the amendments in question were made.

return on investment. *Id.* To achieve further protection against the removal of officers, a provision requiring an affirmative vote of not less than a stated number of directors may be inserted. However, such provision is of practical effect only when coupled with a provision against an increase in the number of directors. Hornstein, *supra,* at 1044.[3]

The difficulty of disposing of an investment in a close corporation also increases the desire of minority shareholders for a veto over corporate decisions. O'Neal, *supra,* at § 4.03. Consequently, amendments to the articles of incorporation and bylaws of a closely held corporation which eliminate veto arrangements agreed to by the shareholders when they incorporated the business will invariably cause a fundamental change in the investment contract between shareholders.

Eliminating a minority shareholder's veto power over decisions of the majority shareholder, particularly in cases such as this,[4] unquestionably limits the voting rights of the minority shareholder. Without a veto power, a minority shareholder has no control over numerous crucial corporate actions, including decisions to:

(1) Drain off earnings by paying excessive salaries, bonuses, fringe benefits, or excessive travel and entertainment expenses;

(2) Make loans or advances to officers with or without security;

(3) Not pay dividends;

(4) Sell, transfer or pledge assets of the corporation; and

(5) Refuse to disclose results of operations and withhold books and records.

See Elson, *Shareholders Agreements, A Shield For Minority Shareholders Of Close Corporations,* The Business Lawyer (January 1967), *reprinted in* 1971 *Selected Articles On Closely Held Enterprises,*

A.B.A. Sec. Corp., Banking & Bus.L. 457, 458. Before the amendments, appellant had the right to cast the *deciding* vote in these key decisions. Following the amendments, appellant's right to vote on these decisions is little more than a formality. Thus, the amendments in question fundamentally altered the investment contract between appellant and respondent corporation. *Cf. Bergman v. St. Paul Mut. Bldg. Ass'n,* 29 Minn. 275, 278, 13 N.W. 120, 120 (1882) (articles of incorporation are in the nature of a fundamental contract between the corporation and its stockholders).

The existence of veto power increases the risk of corporate deadlock. 2 O'Neal, *O'Neal's Close Corporations* § 9.02 at 5 (3d ed. 1988). Nevertheless, the existence of this risk does not justify allowing a majority shareholder to change the investment contract fundamentally or freeze out a minority shareholder. In response to the problem of corporate deadlock, the trend in recent years has been for courts to order dissolution rather than permit those who control the corporation from treating minority shareholders unfairly. *Id.* Dissolution, however, is considered a harsh remedy, one to be used only as a last resort. *Id.* § 9.03 at 10. A less drastic approach to the problem of deadlock is for certain shareholders to buy out others in the event of a stalemate. *Id.* § 9.03 at 9. This is essentially what appellant is seeking.

Although veto power in the hands of a minority shareholder is subject to abuse, so is the voting power held by the majority shareholder(s). Enhanced availability of the "appraisal remedy" under section 302A.471 will deter both forms of oppression. Moreover, the availability of such a legal remedy will relieve courts, in an exercise of their equitable powers, from performing the difficult task of balancing the equities when there has been unfair conduct by both factions. In the context of closely held corporations, the availability of

---

**3.** In the present case, the articles did not require the affirmative vote of a stated number of directors for approval of officers and managers. The articles did, however, permit a maximum of five directors. The amendments in question reduced the maximum number of directors and, therefore, as a practical matter, assured that minority shareholders *without* veto power would not be able to elect additional directors in order to undercut or circumvent the majority shareholder(s)' control of the corporation.

**4.** In this case, more than 50 percent of the shares are controlled by one shareholder who is also the president.

such a remedy will also make the closely held corporation more like a partnership, a result which is consistent with the basic goal of most investors in a closely held corporation as well as Minn.Stat. ch. 302A.

■ We also conclude that the amendments in question exclude or limit the right of the appellant to cumulate votes.[5] Minnesota Statutes section 302A.215, subdivision 1 (1988) provides that, unless the articles provide that there shall be no cumulative voting, each shareholder has the right to cumulate votes in the election of directors subject to other limitations which are not pertinent here. In the present case, the articles do not preclude cumulative voting; therefore, it is permissible. Although cumulative voting is intended to assure minority shareholders an opportunity to elect at least one director, where the board of directors is of a small size, holders of small minority interests would not be assured of any representation on the board. In the present case, reducing the maximum number of directors from five to three allows the majority shareholders to consolidate their control of the board of directors and prevent appellant from electing more than one director. This again materially and adversely affects a minority shareholder within the meaning of Minn.Stat. § 302A.471 (1988).

For all of the above reasons,[6] the decision of the court of appeals is reversed and the case is remanded to the trial court for a determination of the fair value of appellant's shares to be awarded to him in accordance with Minn.Stat. ch. 302A.471.

KELLEY, J., took no part in the consideration or decision of this matter.

---

5. Cumulative voting allows each shareholder to multiply the number of votes he or she is entitled to cast by the number of directors to be elected by the voting group at the meeting and cast the product for a single candidate or distribute the product among two or more candidates. *Model Business Corporation Act Annotated*, 2 A.B.A. Sec. Corp., Banking & Bus.L. § 7.28(c) at 671 (1985).

6. Since we hold that appellant is entitled to statutory relief under Minn.Stat. § 302A.471, we need not determine whether appellant would be entitled to separate equitable relief under Minn. Stat. § 302A.751.