Noel KJESBO, Respondent,

v.

Randy RICKS, et al., Respondents (C9–93–160), Appellants (C5–93–365)

Douglas Daniels, Appellant (C9–93–160) Respondent (C5–93–365)

Metropolitan Life Insurance Company, Respondent.

Nos. C9–93–160, C5–93–365.

Court of Appeals of Minnesota.

Sept. 21, 1993.

Review Granted Nov. 16, 1993.

William D. Turkula, Michael L. Weaver, Messerli & Kramer, Minneapolis, for Noel Kjesbo.

Michael M. Fluegel, Warren C. Anderson, Fluegel, Anderson, Dalager & Seibel, Morris, for Randy Ricks, et al.

Dennis J. Helseth, Helseth and Brutlag, Elbow Lake, for Douglas Daniels.

G. Martin Johnson, Minneapolis, for Metropolitan Life Ins. Co.

Considered and decided by PETERSON, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

PETERSON, Judge.

In an action for tortious interference with a contract to purchase agricultural land, Randy, Karen and Valerie Ricks and Douglas Daniels appeal from a summary judgment in favor of respondent Noel Kjesbo. The Ricks and Daniels also challenge the trial court's award of attorney fees to Kjesbo and respondent Metropolitan Life Insurance Company. Respondent Metropolitan Life Insurance Company seeks review of the trial court's denial of its motion for attorney fees against Kjesbo. We reverse and remand.

## FACTS

In 1988, respondent Metropolitan Life Insurance Company (Met Life) acquired a 320-acre tract of farm land from appellant Valerie Ricks through a deed in lieu of foreclosure. On April 17, 1990, Met Life accepted respondent Noel Kjesbo's offer to purchase the land for $165,000 subject to Valerie Ricks' statutory right of first refusal pursuant to Minn. Stat. § 500.24, subd. 6 (1990). On May 16, 1990, Met Life sent Valerie Ricks notice of her right of first refusal.

After appellant Douglas Daniels agreed to finance the transaction, Valerie Ricks exercised her right of first refusal. On July 20, 1990, Daniels paid Met Life $16,000 in earnest money. Five days later, Daniels paid Met Life the balance of the purchase price, and Met Life conveyed the land to Valerie Ricks.

On July 27, 1990, Valerie Ricks conveyed 160 acres of the land (the northwest quarter) to her son, appellant Randy Ricks. The same day, Randy Ricks conveyed the northwest quarter to Daniels. Valerie Ricks retained legal title to the remaining 160-acre tract (the southwest quarter) and mortgaged it to Daniels as security for an $85,000 promissory note.

In early 1991, Daniels leased the southwest quarter from Valerie Ricks pursuant to an oral agreement. The lease payments were about equal to the mortgage payments.

In December 1991, Kjesbo began an action against the Ricks, Daniels and Met Life alleging a violation of Minn.Stat. § 500.24. An amended complaint was filed on January 24, 1992 adding the following causes of action: (1) tortious interference with a contract; (2) breach of contract against Met Life; and (3) negligence against Met Life.

In September 1992, Valerie Ricks conveyed the southwest quarter to Randy Ricks, and Daniels conveyed the northwest quarter to Randy Ricks. The Ricks and Daniels allege that their intent all along was to enable Randy Ricks to acquire the family farm. They claim that financial difficulties involving the Federal Deposit Insurance Corporation prevented him from purchasing the farm in 1990. According to Randy Ricks, upon resolving his financial difficulties in May 1992, he began trying to obtain financing to acquire the farm. He obtained the financing in September 1992.

Kjesbo filed a motion for summary judgment, and Met Life filed a cross-motion for summary judgment seeking dismissal of all claims against it. The trial court granted Kjesbo's motion for summary judgment against the Ricks and Daniels on the tortious interference claim and dismissed the statutory violation claim as moot. The trial court also granted Met Life's motion for summary judgment and dismissed it from the action. Ricks and Daniels appeal from the summary judgment in favor of Kjesbo.

The trial court ordered the Ricks and Daniels to pay Met Life attorney fees based on Met Life's purchase agreement with Valerie

Ricks. The purchase agreement between Kjesbo and Met Life provides that the successful party in any proceeding relating to the agreement is entitled to attorney fees. A copy of the agreement was attached to the notice of statutory right of first refusal sent to Valerie Ricks, and the notice provides that Valerie Ricks may purchase the land under the terms of the agreement between Kjesbo and Met Life. The Ricks and Daniels appeal from the award of attorney fees to Met Life. Met Life seeks review of the trial court's denial of its motion for an award of attorney fees against Kjesbo.

The trial court also ordered the Ricks and Daniels to pay Kjesbo attorney fees. The Ricks and Daniels appeal from this decision.

## ISSUES

I. Did the trial court err in ordering summary judgment in favor of Kjesbo on the tortious interference claim?

II. Did the trial court err by requiring the Ricks and Daniels to pay attorney fees to Met Life and Kjesbo and denying Met Life's motion for attorney fees against Kjesbo?

## ANALYSIS

### I.

■ On appeal from a summary judgment, this court must examine the record to determine whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* "Statutory construction is a question of law and is subject to *de novo* review on appeal." *Whetstone v. Hossfeld Mfg. Co.,* 457 N.W.2d 380, 382 (Minn.1990).

■ The elements of a claim for tortious interference with a contract are:

(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) an intentional interference with the contract (4) without justification; and (5) damages.

*Schumacher v. Ihrke,* 469 N.W.2d 329, 332 (Minn.App.1991). The Ricks and Daniels dispute the existence of each element.

### *Existence of contract.*

■ The evidence that Met Life accepted Kjesbo's offer to purchase the land is sufficient to establish the existence of a contract for purposes of a tortious interference claim. *See id.* (purchase agreement contingent on preceding owner's declining to exercise statutory right of first refusal constituted contract for purposes of tortious interference claim).

### *Knowledge of contract.*

The Ricks admit their awareness of the agreement between Kjesbo and Met Life. Daniels admits only that he knew a third party had offered to purchase the land from Met Life. Viewing the evidence in the light most favorable to Daniels, he may not have been aware that Met Life had accepted the offer subject to Valerie Ricks' right of first refusal. Therefore, the trial court erred in concluding that Daniels was aware of the contract as a matter of law.

### *Intentional interference.*

■ Interference includes

any act injuring or destroying persons or property which retards, makes more difficult, or prevents performance, or makes performance of a contract of less value to the promisee.

*Id.* (quoting *Royal Realty Co. v. Levin,* 244 Minn. 288, 291 n. 5, 69 N.W.2d 667, 671 n. 4 (1955)). Knowledge may establish intentional interference:

The rule applies * * * to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

Restatement (Second) of Torts § 766 cmt. j (1979), *quoted in Schumacher,* 469 N.W.2d at 329.

The Ricks do not dispute the existence of this element. Because there is a fact question about Daniels' knowledge of the contract, whether he intentionally interfered with the agreement is also a fact issue.

*Justification.*

■ Justification is generally a question of fact. *Guerdon Indus., Inc. v. Rose,* 399 N.W.2d 186, 188 (Minn.App.1987). There is not a precise definition for the term justification; the standard is what was just and reasonable under the circumstances. *Id.* The defendant has the burden of proving justification. *Schumacher,* 469 N.W.2d at 332.

■ The Ricks and Daniels argue Minn.Stat. § 500.24, subd. 6 (1990) justified any interference with the contract between Kjesbo and Met Life. Minn.Stat. § 500.24, subd. 6(a) gives an immediately preceding former owner a right of first refusal when agricultural land or a farm homestead is sold. The purpose of the statutory right of first refusal is set forth in Minn.Stat. § 500.24, subd. 1:

> The legislature finds that it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 6(n) provides:

> An immediately preceding former owner, except a former owner who is actively engaged in farming as defined in subdivision 2, paragraph (a), and who agrees to remain actively engaged in farming on a portion of the agricultural land or farm homestead for at least one year after accepting an offer under this subdivision, may not sell agricultural land acquired by accepting an offer under this subdivision if the arrangement of the sale was negotiated or agreed to prior to the former owner accepting the offer under this subdivision. A person who sells property in violation of this paragraph is liable for damages plus reasonable attorney fees to a person who is damaged by a sale in violation of this paragraph. There is a rebuttable presumption that a sale by an immediately preceding former owner is in violation of this paragraph if the sale takes place within 270 days of the former owner accepting the offer under this subdivision. This paragraph does not apply to a sale by an immediately preceding former owner to the owner's spouse, the owner's parents, the owner's sisters, and brothers, the owner's spouse's sisters and brothers, or the owner's children.

After exercising her statutory right of first refusal, Valerie Ricks transferred the northwest quarter to her son, Randy Ricks, who then transferred it to Daniels. By transferring the property through Randy Ricks, the Ricks and Daniels complied with the literal requirements of Minn.Stat. § 500.24, subd. 6(n).

Based on *Schumacher,* the trial court concluded that as a matter of law, the actions of the Ricks and Daniels were not justified despite their technical compliance with the statutory requirements. In *Schumacher,* as in this case, after the former owner exercised her statutory right of first refusal, the property was transferred to a third party through the former owner's son. 469 N.W.2d at 331. This court held as a matter of law that Minn.Stat. § 500.24, subd. 6 did not justify appellants' interference with respondents' purchase agreement because the former owner and her son "merely acted as conduits through which appellants acquired the property." *Id.* at 334.

However, in *Schumacher,* appellants admitted the purpose of the transaction was to transfer the property to the third party and, in effect, avoid the prohibitions of the statute. *Id.* at 331, 333–34. The Ricks and Daniels claim that their intent all along was to enable Randy Ricks to acquire the family farm. In light of the purpose of the statutory right of first refusal, the evidence about the Ricks' and Daniels' intent and the reason for the transfer of property to Daniels distinguishes this case from *Schumacher* and creates a fact question.

We note that the trial court order granting Kjesbo's motion for summary judgment directs specific performance of the contract between Kjesbo and Met Life upon payment of $165,000 to Met Life. However, it is undisputed that Met Life has already been paid for the property. Because Met Life has been dismissed from the lawsuit and has no claim to the property, it is inappropriate to

involve it in the remedy. If Kjesbo prevails at trial, the trial court should direct the Ricks and Daniels to convey the property to Kjesbo upon payment for their interests in the property. *See id.* at 331, 334 (appellants ordered to convey property to respondents upon receipt of payment for interest in property).

*Damages.*

■■■ The Ricks do not dispute the existence of this element. Daniels argues Kjesbo was not entitled to specific performance of the purchase agreement because he did not prove the land was unique. However, when real property is involved, specific performance is appropriate even if other remedies would be adequate. *Id.* at 335.

## II.

The agreement between Kjesbo and Met Life provides that the successful party in any proceeding relating to the agreement is entitled to attorney fees. Kjesbo's claims against Met Life relate to the agreement between Kjesbo and Met Life, not the agreement between Valerie Ricks and Met Life. The trial court erred by ordering the Ricks and Daniels to pay Met Life attorney fees and denying Met Life's motion for attorney fees against Kjesbo. The amount of fees to be awarded shall be determined by the trial court on remand. Whether Kjesbo is entitled to recover attorney fees paid to Met Life as an item of damages caused by tortious interference with a contract remains an issue for trial.

It appears the basis for the award of attorney fees to Kjesbo was a violation of Minn. Stat. § 500.24, subd. 6(n). Because we have concluded there is a fact issue regarding whether a statutory violation occurred, the award is reversed.

Given our disposition of this case, we do not reach the remaining issues raised by the parties on appeal.

## DECISION

The trial court's grant of summary judgment in favor of Kjesbo is not supported by the record and is inconsistent with applicable law. The trial court erred in requiring the Ricks and Daniels to pay attorney fees to Kjesbo and Met Life and in denying Met Life's motion for attorney fees against Kjesbo.

**Reversed and remanded.**