Noel KJESBO, Petitioner, Appellant,

v.

Randy RICKS, et al., Respondents (C9–93–160), Appellants (C5–93–365),

Douglas Daniels, Respondent (C5–93–365), Appellant (C9–93–160),

Metropolitan Life Insurance Company, Respondent.

Nos. C9–93–160, C5–93–365.

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied Aug. 12, 1994.

William D. Turkula, Thomas W. Larkin, Brenner & Glassman, Ltd., Minneapolis, for appellant.

Michael M. Fluegel, Warren C. Anderson, Fluegel, Anderson, Dalager & Siebel, Chartered, Morris, for Randy Ricks, et al.

Dennis J. Helseth, Helseth & Brutlag, Chartered, Elbow Lake, for Douglas Daniels, Respondent (C5–93–365), Appellant (C9–93–160).

G. Martin Johnson, Johnson & Wentzell, Ltd., Minneapolis, for Metropolitan Life Ins. Co.

## OPINION

SIMONETT, Justice.

This case involves the state family farm foreclosure statute, Minn.Stat. § 500.24, and, specifically, the use of the former owner's statutory right of first refusal.[1]  We conclude

---

1.  Minn.Stat. § 500.24 protects family farmers whose land has been foreclosed or similarly forfeited to creditors by enabling them to exercise a right of first refusal to repurchase the land when the foreclosing agency attempts to sell it.  Minn. Stat. § 500.24, subd. 6(a) (1992), provides in part:

that the manner in which the first refusal right was exercised in this case does not justify interference with plaintiff-appellant's contract to purchase the farmland. We reverse the court of appeals' contrary ruling, and remand to the trial court.

In 1988 Metropolitan Life Insurance Company acquired title to approximately 320 acres of farmland in Grant County, taking a deed in lieu of foreclosure from the owner, defendant-respondent Valerie Ricks.[2] On April 17, 1990, Metropolitan Life accepted an offer from plaintiff-appellant Noel Kjesbo, who was then leasing the land, to purchase the property for $165,000, but the offer was subject to Valerie Ricks' statutory right of first refusal. Metropolitan Life gave proper notice to Valerie Ricks of her right to meet the terms of the Kjesbo contract, but neither she nor her son, defendant-respondent Randy Ricks, had the financial resources to purchase the property. Randy Ricks, however, enlisted the help of his employer, defendant-respondent Douglas Daniels, to finance the purchase. On July 17, 1990, Valerie Ricks exercised her right of first refusal, agreeing to meet the terms of the Kjesbo contract. On July 20, 1990, the Ricks and Daniels executed a written agreement setting out the manner in which the purchase from Metropolitan Life was to be accomplished. Also on July 20, Daniels paid Metropolitan Life $16,000 earnest money.

The closing was held on July 27, 1990. At that time, Metropolitan Life conveyed title to the 320 acres to Valerie Ricks for $165,000, the money supplied by Daniels. Immediately after receiving her deed, Valerie Ricks conveyed half the farmland, the Northwest Quarter, to her son Randy, who in turn conveyed it to Daniels. Valerie Ricks kept the remaining half, the Southwest Quarter, but mortgaged it to Daniels to secure her promissory note, guaranteed by Randy, payable to Daniels in the amount of $85,000.

Consequently, when the closing was completed, Daniels was the fee owner of the Northwest Quarter for which he had paid $80,000 directly to Metropolitan Life (plus picking up the attorney fees and transfer costs for the Ricks and himself). The remaining $85,000 of the $165,000 purchase price paid by Daniels was to be repaid Daniels under Valerie's promissory note.

Subsequently, for the 1991 and 1992 crop years, Daniels farmed both quarters of the farmland, the Northwest Quarter which he owned and the Southwest Quarter which he leased from Valerie Ricks. Randy Ricks helped Daniels farm all of the land as Daniels' employee. During this period, Randy Ricks and Daniels periodically settled rent payments owed by Daniels to Valerie Ricks and mortgage payments owed by Valerie Ricks to Daniels. The mortgage payments were somewhat larger than the rent.

In December 1991, plaintiff Noel Kjesbo filed suit against defendants Valerie Ricks, Randy Ricks (and his wife Karen), Douglas Daniels, and Metropolitan Life. The lawsuit claims defendants violated the right-of-first-refusal statute and had tortiously interfered with Kjesbo's contract to purchase the land from Metropolitan Life. In September 1992, shortly before motions for summary judgment were to be heard, Daniels and Valerie Ricks conveyed their respective quarter sections to Randy Ricks and his wife, Randy having at this time obtained bank financing.

On cross-motions for summary judgment, the trial court ruled in favor of plaintiff Kjesbo. The court found as a matter of law Ricks and Daniels had wrongfully interfered with Kjesbo's contract, and the court granted him specific performance of his contract with Metropolitan Life. The trial court also determined that Kjesbo was entitled to recover attorney fees from the Ricks and Daniels. The trial court ruled that Metropolitan Life

A state or federal agency, limited partnership, or a corporation may not lease or sell agricultural land or a farm homestead before offering or making a good faith effort to offer the land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor.

2. The farmland involved in this lawsuit is a half section located about a half mile from Valerie Ricks' "home farm." The property was known as the former "Watry farm" and was acquired by Valerie Ricks and her husband (now deceased) in the 1960s. The Ricks considered the Watry farm an important part of their overall farming operation.

had given adequate notice to Valerie Ricks of her first refusal rights and dismissed the claims against the insurance company. Defendants Ricks and Daniels were ordered to pay Metropolitan Life's attorney fees. Finally, Kjesbo's separate claim for damages for violation of the statutory right-of-first-refusal law was dismissed as moot.

The court of appeals reversed the trial court. *Kjesbo v. Ricks,* 506 N.W.2d 326, 330–31 (Minn.App.1993). The court of appeals held there was an issue of fact on whether the defendants had, from the beginning, intended Randy Ricks to acquire the farm. *Id.* at 330. The court of appeals further ruled that neither Kjesbo nor Metropolitan Life were entitled to recover attorney fees from the Ricks and Daniels, but that the trial court erred in denying Metropolitan Life's claim for attorney fees against Kjesbo. *Id.* at 331. We granted plaintiff Kjesbo's petition for further review.

### I.

The central issue in this case is whether the manner in which the Ricks and Daniels exercised Valerie Ricks' right of first refusal constituted wrongful interference with plaintiff Kjesbo's contract to purchase the farm from Metropolitan Life.

■■■ A cause of action for wrongful interference with a contractual relationship requires: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales and Assoc., Inc. v. North American Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982). Here, defendant-respondents concede the existence of a contract, knowledge of the contract, and intentional procurement of its breach.[3]

Thus the issue in this appeal narrows down to whether defendant-respondents were justified in procuring a breach of the contract. Or to put it more precisely, the issue is whether there is a genuine issue of material fact on the element of justification, so that the trial court erred in disposing of the wrongful interference claim on summary judgment.

■■■ Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances. *See Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 537, 134 N.W.2d 892, 900 (1965) (quoting *Carnes v. St. Paul Union Stockyards Co.,* 164 Minn. 457, 205 N.W. 630 (1925)). The burden of proving justification is on the defendants. *Royal Realty Co. v. Levin,* 244 Minn. 288, 295, 69 N.W.2d 667, 673 (1955). There is no wrongful interference with a contract where one asserts "in good faith a legally protected interest of his own * * * believ[ing] that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773 (1979).

■■■ Defendant-respondents argue their interference was justified because in good faith they arranged for Valerie Ricks to exercise her right of first refusal under section 500.24, subd. 6(n).[4] Though half the farm

---

**3.** The court of appeals' opinion incorrectly thought there was an issue of fact on whether Daniels had knowledge of Kjesbo's contract with Metropolitan Life. 506 N.W.2d at 329. It is enough if the defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to complete disclosure of the contractual relations and rights of the parties. 45 Am.Jur. 2d, *Interference* § 11 (1969). The record shows that Daniels admitted knowing a third party had agreed to purchase the farm from Metropolitan Life subject to Valerie Ricks' statutory right of first refusal. Daniels was certainly put on inquiry of the existing contractual relationship.

**4.** Section 500.24, subdivision 6(n) provides generally that former owners cannot agree to sell land to a third party prior to exercising their first refusal right. It states:

An immediately preceding former owner, except a former owner who is actively engaged in farming as defined in subdivision 2, paragraph (a), and who agrees to remain actively engaged in farming on a portion of the agricultural land or farm homestead for at least one year after accepting an offer under this subdivision, may not sell agricultural land acquired by accepting an offer under this subdivision if the arrangement of the sale was negotiated or agreed to prior to the former owner accepting the offer under this subdivision. A person who sells property in violation of this paragraph is liable for damages plus reasonable attorney fees to a person who is damaged by a sale in violation of this paragraph. There is a rebuttable presumption that a sale by an immediately preceding former owner is in violation of this para-

was conveyed to Daniels, an outsider, they say their intention all along was for Randy Ricks to acquire the land in keeping with the purpose of the statute to preserve family farms. *See* Minn.Stat. § 500.24, subd. 1 (1992) ("it is in the interests of the state to encourage and protect the family farm as a basic economic unit * * * and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family"). At the very least, argue defendants, their intention is a question of fact to be decided at trial. Defendants point out that at the time of closing Randy Ricks' problems with the FDIC had prevented him from taking title in his own name; but that later, when these problems were resolved, he obtained a bank loan and took title to the entire farm, thereby keeping it in the Ricks family. On the other hand, plaintiff Kjesbo argues that his contract was wrongly interfered with because Valerie Ricks failed to comply with the statutory requirements for exercising her first refusal rights and allowed part of the property to be purchased by a third party.

We think that conveyance of the Northwest Quarter by Valerie Ricks to Daniels by use of son Randy's conduit deed failed to comply with Minn.Stat. § 500.24, subd. 6(n). *See* note 4, *supra.* First of all, during the 270 days following exercise of first refusal rights, subdivision 6(n) prohibits the former owner from selling the farmland to a third party if the sale arrangements were "negotiated or agreed to" prior to the former owner's exercising her right of first refusal. See note 4, *supra.* The subdivision provides further that it is to be presumed (subject to rebuttal) that a sale to a third party within

270 days of the exercise of the right of first refusal is in violation of the subdivision.[5]

It is questionable if defendant-respondents have produced evidence which might rebut the statutory presumption. Daniels says Randy Ricks talked with him about his mother exercising the right of first refusal "[w]ithin the first two weeks" of July 1990, and Valerie Ricks exercised her right of first refusal on July 17. As Daniels put it, "[I]t started out as financing Val to buy it. And it came down to the point that Val would buy a quarter and I would buy a quarter * * *." Under a document entered into by the Ricks and Daniels dated July 20—three days after Valerie exercised her right of first refusal— the parties put in writing their agreement, including the conduit arrangement to convey the Northwest Quarter to Daniels.

Arguably, there is a fact issue whether the respondents had "negotiated" the terms of their purchase prior to Valerie Ricks' exercise of her right of first refusal. But even if this were so, we conclude that the use of the conduit deed to Randy Ricks as the strawman was improper and impermissible under the statute, so that, as a matter of law, there was no justification for respondents' interference with the Kjesbo contract.

In *Schumacher v. Ihrke*, 469 N.W.2d 329 (Minn.App.1991), the court of appeals held that use of a conduit deed to evade the statutory restrictions on exercise of the right of first refusal, while the conduit might be in technical compliance with the statute, nevertheless, this arrangement could not be used to justify interference with the contractual rights of another. *Id.* at 334. In that case,

graph if the sale takes place within 270 days of the former owner accepting the offer under this subdivision. This paragraph does not apply to a sale by an immediately preceding former owner to the owner's spouse, the owner's parents, the owner's sisters and brothers, the owner's spouse's sisters and brothers, or the owner's children.

5. While subdivision 6(n) prohibits a sale by an immediately preceding former owner within 270 days of the owner's exercising her right of first refusal, the subdivision goes on to say that this prohibition does not apply to a sale to certain members of the former owner's family, including the former owner's children. See note 4, *supra.*

This family exception to the 270–day rule provides the inspiration for the conduit arrangement. While Valerie Ricks could not sell her farmland to Daniels for 270 days, she could sell it to her son. It is the theory of defendant-respondents that the son Randy could, without waiting for the 270 days to pass, then sell or transfer the property immediately to Daniels, free of the strictures of subdivision 6(n).

Randy Ricks was not paid anything by Daniels for his deed of the Northwest Quarter to Daniels. In other words, the deed was a conduit and Randy Ricks was the strawman.

the bank conveyed the property to the immediately preceding former owner, who conveyed the property to her son, who in turn conveyed the property to third party neighbors who provided the funds to pay the bank. "If a former owner may effect a transfer within the 270–day period to a third party via a family member," said the court of appeals, "the statute's purpose is defeated, especially after the legislature prohibited assignments of the right of first refusal, prohibited agreements to sell prior to acceptance of this right, and presumed all sales within 270 days of the exercise of this right other than to immediate family members invalid." *Id.*

Defendant-respondents argue this case is distinguishable from *Schumacher* because in *Schumacher* the third parties kept, and intended to keep, the farmland for themselves. In this case, defendant-respondents claim that Daniels and Valerie Ricks only intended to keep their halves of the farmland until such time as the son Randy could buy them back, and that this was everybody's intention from the beginning.

The record shows that on July 20, 1990, the Ricks and Daniels reduced their agreement to a written, signed document. This written agreement is silent, however, on any plan for Randy Ricks to acquire the entire farm, nor is the subject even mentioned. But assuming defendant-respondents can nevertheless establish that the intention of the parties was for Randy Ricks to acquire eventually the entire farm, the question still remains whether this intention would justify interference with plaintiff Kjesbo's contract. We believe not.

In our view, the concerns expressed in *Schumacher* are just as valid here. The use of a strawman to comply technically with the statute does not change the fact that the net result of the exercise of the right of first refusal is to enable a third party to become the immediate owner of the farm, a result contrary to the purpose of the statute.[6]

Defendant-respondents point out that in this case half the farm stays with the former owner. They argue the intent of the statute is to allow the immediately preceding former owner to retain part of the farm and to use the remainder to finance the purchase of the part retained. This is not, however, quite what the statute contemplates. Under subdivision 6(c) of the statute, an immediately preceding former owner may elect to purchase the entire property or "an agreed to portion of the property." But this election to purchase only part of the farm must be made prior to the time the property is first offered for sale. *Id.* If, instead, the immediately preceding former owner is first presented by the title-holding bank with a third party's offer to buy the farm, the immediately preceding owner must meet the terms of that offer; nothing in the statute appears to permit the immediately preceding owner to defeat the third party's offer by buying only a part of the farm, a proposal that in any event would require the agreement of the bank which is already contractually bound to the third party.

There is no objection, of course, to an immediately preceding former owner obtaining private financing to re-acquire the farm, but not in the manner that occurred here. In this case, as consideration for a loan of $85,000 to Valerie Ricks to buy half the farm, Douglas Daniels was allowed to buy the other half for himself. In effect, the conduit deed in this situation is really no different than an assignment to a third party of the right of first refusal to buy back part of the farm, an assignment which is prohibited under subdivision 6(m) of the statute. The fact that Daniels decided some 2 years later to sell his quarter to Randy Ricks is not particularly relevant.

If the right of first refusal could be so easily manipulated to enable third parties to take advantage of the immediately preceding former owner's right of first refusal, the purpose of the law to protect the farm for its farm family would be frustrated. It may be desirable for a farm family to reacquire at least half the farm if it is not able to acquire

6. In other respects, too, it appears there was noncompliance with subdivision 6(n). While it is true that Randy Ricks continued to farm the land, subdivision 6(n) requires the immediately preceding former owner to be the one actually engaged in the farming, and this was Valerie, not Randy. Randy Ricks only worked on the farm as an employee of Daniels.

all of it, but the legislature has provided a specific, separate procedure for the farm owner to purchase part of the farm which does not involve a misuse of the right of first refusal procedure.

We affirm the trial judge's ruling granting plaintiff Kjesbo summary judgment on his tortious interference claim and awarding specific performance relief.

## II.

Metropolitan Life successfully defended itself against plaintiff Kjesbo's claims against it. As the prevailing party, it is entitled to its costs and attorney fees from Kjesbo pursuant to the provisions of its contract with Kjesbo. This issue is remanded to the trial court. We agree with the court of appeals in its ruling that the trial court erred in requiring the Ricks and Daniels to pay attorney fees to Metropolitan Life.

Reversed in part, affirmed in part, and remanded.