**James L. SIFFERLE, Appellant,**

v.

**MICOM CORPORATION, Micom Holding Company and Edwin E. Walhof, Respondents.**

**No. C1–85–2147.**

Court of Appeals of Minnesota.

April 1, 1986.

Review Denied June 13, 1986.

504

James L. Sifferle, pro se.

Mark E. DuVal, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for respondents.

Considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal raises the question whether the Minnesota Business Corporation Act, Minn.Stat. §§ 302A.001–.917 (1984), permits a "freeze-out" merger which eliminates the minority shareholders for the purpose of taking private a previously public corporation. The trial court ruled that such a freeze-out merger was permissible and held that a minority shareholder's sole remedy, absent fraud, was an appraisal under Minn.Stat. § 302A.471. We affirm.

## FACTS

Micom Corporation is a Minnesota corporation whose shares have been publicly traded in the over-the-counter market since 1978. On May 27, 1983, Micom made a tender offer to its shareholders, offering to buy Micom's shares at a price of $10 per share. The offer was conditioned upon a sufficient number of shares being tendered to make Edwin Walhof, the president of Micom, the owner of 90 percent of the remaining outstanding shares. (At the time of the offer, Walhof and his immediate family owned 76 percent of the total outstanding shares). James Sifferle, the owner of 1,600 shares or about 1 percent of Micom, received this notice and offer to purchase. He chose not to tender his shares.

On December 6, 1983, Micom notified its remaining shareholders that it would be merging into Micom Holding Company, another Minnesota corporation, and provided the shareholders with the plan of merger dated December 7, 1983. Micom Holding Company, as a result of the prior tender offer, owned 93 percent of Micom. The directors of Micom Holding Company (the Walhofs) merged the subsidiary (Micom) into the parent (Micom Holding Company) pursuant to the "short form" merger provisions of Minn.Stat. § 302A.621. The articles of merger were filed with the Secretary of State on December 9, 1983.

The plan of merger submitted to Sifferle informed him that he had 30 days to dissent and receive the fair value of his shares pursuant to Minn.Stat. §§ 302A.471 and 302A.473. Sifferle did not assert any dissenter's rights within the required 30-day period, nor did he accept payment of the $10 per share conversion price for his shares.

In December 1984 Sifferle commenced this action, seeking to set aside the merger and recover "compensatory damages or rescissory damages." He alleged that Minn.Stat. § 302A.621 does not allow a freeze-out merger by controlling shareholders for the purpose of taking a company private; that the short form merger was not performed in accordance with the procedures set out in the Act; that the tender offer was a violation of fiduciary duty to the minority shareholders; that there were fraudulent representations contained in the tender offer; and that he was wrongfully denied access to the shareholder records of Micom.

Respondents admit that the tender offer and short form merger were undertaken to enable the company "to become closely held." Respondents moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court granted the motion and dismissed the complaint with prejudice.

## ISSUES

1. Is an appraisal proceeding under Minn.Stat. § 302A.471 the exclusive remedy available to minority shareholders eliminated by a "freeze-out" merger?

2. Does the Minnesota Business Corporation Act permit the use of a tender offer and short form merger to eliminate the minority shareholders of a public corporation?

3. Did the complaint sufficiently plead a claim of fraud to survive a motion for dismissal?

## DISCUSSION

### I

Minn.Stat. § 302A.553, subd. 1, permits a corporation to acquire its own shares, as long as the corporation will be able to pay its debts in the ordinary course of business after the purchase. Similarly, Minn.Stat. § 302A.621, subd. 1, provides that

> [a] parent owning at least 90 percent of the outstanding shares * * * of a subsidiary may merge the subsidiary into itself without a vote of the shareholders of either corporation.

Thus, the tender offer and short form merger in issue are both permitted under Minnesota law.

Minn.Stat. § 302A.471, subd. 1(c), provides that a shareholder of a merged corporation may dissent from the transaction and obtain payment for the fair value of his shares. Respondents argue that this section provides the exclusive remedy for a minority shareholder dissenting from a freeze-out merger.[1] Sifferle claims that a "frozen-out" shareholder may also bring an action to set aside the merger.

■ Minn.Stat. § 302A.471, subd. 4, addresses this point and provides:

> The shareholders of a corporation who have a right under this section to obtain payment for their shares *do not have a*

right at law or in equity to have a corporate action described in subdivision 1 set aside or rescinded, *except* when the corporate action is *fraudulent* with regard to the complaining shareholder or the corporation.

(Emphasis added). Thus, the appraisal right of a frozen-out shareholder is his exclusive remedy *unless* the merger is "fraudulent" to him or the corporation. We must therefore construe the breadth of the term "fraudulent."

Many jurisdictions have addressed the exclusivity of an appraisal remedy in a freeze-out merger context. In *Rabkin v. Philip A. Hunt Chemical Corp.*, 498 A.2d 1099 (Del.1985), the Delaware Supreme Court held that specific allegations of "procedural unfairness" and "unfair dealing" in a freeze-out merger were sufficient to sustain an equitable action challenging the "entire fairness" of the merger. *Id.* at 1104–05, 1107; *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 711, 714 (Del. 1983) (appraisal remedy exclusive absent allegations that freeze-out merger failed test of entire fairness, which consists of fair dealing and fair price); *Alpert*, 63 N.Y.2d at 568, 483 N.Y.S.2d at 673, 473 N.E.2d at 25 (appraisal remedy exclusive unless merger "unlawful or fraudulent" as to complaining shareholder); *Yeager v. Paul Semonin Co.*, 691 S.W.2d 227, 228 (Ky.Ct.App.1985) (equitable action allowed under Model Business Corporation Act where allegations of "illegality or fraud" involved); *Mullen v. Academy Life Insurance Co.*, 705 F.2d 971, 974 (8th Cir.1983) (construing New Jersey law as allowing equitable action by minority shareholder upon allegations of breach of fiduciary duty, unlawfulness or fraud by majority), *cert. denied*, 464 U.S. 827, 104 S.Ct. 101, 78 L.Ed.2d 105. *But see Yanow v. Teal Industries, Inc.*, 178 Conn. 262, 422 A.2d 311 (1979) (appraisal right held to be exclusive remedy).

---

1. A "freeze-out" merger is one which forces the minority interest to give up its equity in the corporation in exchange for cash or senior securities while allowing the controlling interest to

retain its equity. *Alpert v. 28 Williams Street Corp.*, 63 N.Y.2d 557, 566 n. 2, 483 N.Y.S.2d 667, 672 n. 2, 473 N.E.2d 19, 24 n. 2 (1984).

■ The Reporter of the Advisory Task Force on Minnesota Corporation Law comments that Delaware courts impose a requirement of "entire fairness" on a merger transaction but that "[t]he remedy for lack of 'entire fairness' in the [merger] transaction in this act is the appraisal section * *." Minn.Stat.Ann. § 302A.601 reporter's notes, at 212–13 (West Special Pamphlet 1985). Thus, it would seem clear that the Minnesota legislature did not intend to allow an equitable action challenging the "entire fairness" of a freeze-out merger as is permitted under Delaware law. The term "fraudulent" in Minn.Stat. § 302A.471, subd. 4, cannot be read broadly enough to permit an "entire fairness" challenge to this merger.

■ The reporter's notes to Minn.Stat. § 302A.471 state that the section "is essentially" section 80 of the Model Business Corporation Act. Minn.Stat. Ann. § 302A.471 reporter's notes (West Special Pamphlet 1985). Section 80(d) of the Model Act provides that appraisal rights are exclusive except when the corporate action is "fraudulent" or "unlawful." Model Business Corp. Act § 80(d) (1980). Minn.Stat. § 302A.471, subd. 4, dispenses with the term "unlawful" and uses only the term "fraudulent." The notes to § 302A.471, subd. 4, quote the comments to § 80(d) of the Model Act:

> However, the fact that shareholders can get paid off does not justify the corporation in proceeding unlawfully or fraudulently. If the corporation attempts to carry through an action in violation of the corporation law on voting, in violation of charter clauses prohibiting it, by deception of shareholders or in violation of a fiduciary duty the court's freedom to intervene is unaffected.

Minn.Stat.Ann. § 302A.471 reporter's notes, at 179 (West Special Pamphlet 1985). We think that by choosing to exclude the term "unlawful" from § 302A.471, subd. 4, when it was present in § 80(d) of the Model Act, and by approving the above-cited comments to the Model Act, the Minnesota legislature intended the term "fraudulent" in § 302A.471, subd. 4, to be construed more broadly than strict common-law fraud.[2]

It appears that the legislature intended the term "fraudulent" to cover at least the situations described in the comments to § 80(d) of the Model Act quoted above. Therefore, if a complaint pleads with specificity that a merger was carried out through deception, misrepresentation, actual fraud, or in violation of applicable statutes or articles of incorporation, or in violation of a fiduciary duty, it should not be dismissed for failure to state a claim.

## II

We now reach the issue whether a freeze-out merger which eliminates the minority shareholders of a public corporation constitutes a breach of fiduciary duty by the majority and is therefore "fraudulent" under Minn.Stat. § 302A.471, subd. 4.

■ Normally, a director's dealings with his corporation and transactions between two corporations having a common director are subject to "rigorous scrutiny," requiring the director to establish the entire fairness of the transaction. *Westgor v. Grimm*, 318 N.W.2d 56, 59 (Minn.1982) (quoting *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939)). Failure to establish such fairness would constitute a breach of fiduciary duty.

Some commentators have argued that freeze-outs of minority shareholders in public corporations undertaken solely to allow the corporation to "go private" should be absolutely prohibited as a breach of fiduciary duty to the minority. *See* Brudney & Chirelstein, *A Restatement of Cor-*

---

2. For example, the legislature certainly did not intend that because the term "unlawful" was not included in § 302A.471, subd. 4, a dissenting shareholder could not seek to set aside a merger which did not comply with the statutory procedure governing mergers. *See Pitts v. Halifax Country Club, Inc.*, 19 Mass.App.Ct. 525, 476 N.E.2d 222 (1985) (failure to comply with statutory requirements renders merger voidable by objecting shareholder).

*porate Freezeouts,* 87 Yale L.J. 1354, 1365–70 (1978) [hereinafter cited as Brudney & Chirelstein].[3] The authors claim that such a merger "simply shifts publicly owned stock into the hands of the insiders and promises no economic gains *to the enterprise;*" that the majority's fiduciary duty to the minority ins such a situation is strong; and that "going private * * * offers no feasible means of determining whether public stockholders have in fact been fairly compensated for their interests." *Id.* at 1367, 1365, 1368. They conclude that corporation statutes should not be construed to permit "insiders unilaterally to condemn the stock of public investors when the effect is to leave the public with no chance of return to the enterprise." [4] *Id.* at 1367.

Indeed, the authors would specifically prohibit "going private" arrangements in which "the merger is preceded by a tender offer from the company itself." *Id.* at 1370. However persuasive, we have not been cited to a case which has adopted this argument, nor has our research disclosed any.

Delaware courts had adopted a doctrine which required every merger to have a valid business purpose. In *Singer v. Magnavox Co.,* 380 A.2d 969 (Del.1977), the court held that a "long form" merger undertaken solely to freeze out and eliminate minority shareholders was a violation of fiduciary duty. *Roland International Corp. v. Najjar,* 407 A.2d 1032 (Del.1979) extended this rule to short form mergers. These cases required the controlling shareholders to demonstrate a valid "business purpose" in order to uphold a freeze-out merger.[5] *See also Bird v. Wirtz,* 266 N.W.2d 166 (Minn.1978); *Gabhart v. Gabhart,* 267 Ind. 370, 389, 370 N.E.2d 345, 356

(1977); *Alpert,* 63 N.Y.2d at 573, 483 N.Y.S. at 676–77, 473 N.E.2d at 28; *Klurfield v. Equity Enterprises, Inc.,* 79 A.D.2d 124, 135, 436 N.Y.S.2d 303, 309 (1981).

The business purpose rule, however, was explicitly rejected in Minnesota. Minn. Stat. § 302A.601, subd. 1, provides that "[a]ny two or more corporations may merge, resulting in a single corporation, with or without a business purpose * * *." The reporter's notes indicate that "[t]his section [302A.601] removes 'business purpose' from the list of requirements for a valid merger." Minn.Stat.Ann. § 302A.601 reporter's notes, at 212 (West Special Pamphlet 1985). Furthermore, the notes to § 302A.471 state that "the * * * absence of a 'business purpose' [for a corporate change] * * * *is not a breach of fiduciary duty* * * *." Minn.Stat.Ann. § 302A.471 reporter's notes, at 179 (West Special Pamphlet 1985) (quoting comments to § 80(d) of the Model Act) (emphasis added). Thus, it is not a breach of fiduciary duty for the majority to use a freeze-out merger simply to eliminate minority shareholders in a public corporation. *See also Yeager,* 691 S.W.2d at 228–29 (freeze-out merger undertaken solely to eliminate minority shareholders of public corporation permissible); *Leader v. Hycor, Inc.,* 395 Mass. 215, 479 N.E.2d 173 (1985) (use of reverse stock split to eliminate public minority ownership and take corporation private permitted).

While we find much to commend in the analysis offered by Brudney and Chirelstein, we are constrained by the clear intention of the Minnesota legislature to permit freeze-out mergers eliminating the minority, even in situations which would seem to implicate the strong fiduciary

---

**3.** "Going private" is described as a situation where

controlling stockholders who are responsible for the company's management, having determined that its shares are undervalued by the market relative to its prospects and expectations, seek to terminate the public stockownership and return the firm to the status of a closely held entity.

Brudney & Chirlestein, 87 Yale L.J. at 1365.

**4.** Sifferle does not challenge the merger as an unconstitutional condemnation of private property under Minn. Const. art. I, § 13 (1984). We express no opinion on such an argument.

**5.** In 1983, the Delaware Supreme Court overruled *Singer* and *Roland* and the business purpose rule. *See Weinberger,* 457 A.2d 701.

duties imposed on insiders.[6] Absent other allegations discussed above, a dissenting shareholder in such a situation is relegated to his appraisal rights under § 302A.471.

■ We also hold that no fiduciary duty was breached by Micom's tender offer for its own shares, even though the goal of the tender offer was to facilitate the elimination of the minority. Such tender offers should be viewed as a unit and treated alike. Thus, if the merger is to be allowed, the tender offer should likewise be permitted. *See* Brudney & Chirelstein at 1370; *Note:* Going Private, 84 Yale L.J. 903, 910 (1975) (detailing instances of tender offers by corporations seeking to eliminate public shareholders); *Joseph v. Shell Oil Co.*, 482 A.2d 335, 345 (Del.Ch.1984) (tender offer made by majority stockholder seeking to eliminate minority permissible).

### III

■ Sifferle next claims that his complaint sufficiently pleaded fraud or misrepresentation. The complaint alleges that the tender offer represented that an appraisal opinion was available for inspection and copying, but that in fact the opinion was not completed at the time the tender offer was mailed. The trial court ruled that even if this were a misrepresentation, Sifferle would have to show reliance in order to state a claim. This ruling rested on a strict interpretation of the term "fraudulent" in Minn.Stat. § 302A.471, subd. 4, to require actual fraud. While we have construed the term more broadly, we cannot see how this claimed misrepresentation was material, since the complaint makes clear that the opinion was available at some time after the date of the tender offer. It therefore appears to a certainty from the pleadings that no fact exists which could be introduced to support granting relief under this claim of misrepresentation. *See Northern States Power Co. v.*

*Franklin,* 265 Minn. 391, 122 N.W.2d 26 (1963).

Sifferle also charges that fraud occurred when respondents refused to tender him a list of minority Micom shareholders which he requested after the filing of the articles of merger. Minn.Stat. § 302A.461, subd. 4, permits a shareholder to examine the share register of the corporation. However, Minn.Stat. § 302A.641, subd. 3, provides that upon filing of the articles of merger, the shares of the corporation to be converted cease to exist. The notes to § 302A.641 provide that, upon the effective date of the merger, "[the shareholders] are no longer shareholders in the constituent corporation * * * [and that] [t]he only continuing right those shareholders possess is the right to dissent pursuant to section 302A.471." Minn.Stat.Ann. § 302A.641 reporter's notes, at 222 (West Special Pamphlet 1985).

■ In this case, the articles of merger were filed on December 9, 1983. On that date Sifferle ceased to be a shareholder of Micom under Minn.Stat. § 302A.641, subd. 1, and could no longer demand access to the shareholder records. Although he could have made his request when initially presented with the tender offer in May 1983, he did not do so.

■ Finally, Sifferle argues that respondents and their counsel refused to communicate with him during the 30-day period in which he had to assert his dissenter's rights, thus causing him to forfeit his appraisal remedy. It is generally held that there is no bar to instituting an appraisal proceeding in addition to challenging the merger in an equitable proceeding on the grounds of fraud. *See Alpert,* 63 N.Y.2d at 568 n. 4, 483 N.Y.S.2d at 673 n. 4, 473 N.E.2d at 25 n. 4. Therefore, there was no reason for Sifferle to fail to assert his appraisal right, even if he was "negotiating" with respondents with a view to ultimately commencing this action.

**6.** We note that Minnesota law therefore accords less protection to minority shareholders than does the law of Delaware. Situations where directors are on both sides of a merger transaction are generally scrutinized under Delaware law. *See Rabkin,* 498 A.2d 1099; *Weinberger,* 457 A.2d 701.

**DECISION**

Asserting appraisal rights is the exclusive remedy available to a shareholder dissenting from a freeze-out merger unless there are allegations of misrepresentation, fraud, deceit, or breach of fiduciary duty involved in effecting the merger. Majority shareholders do not breach their fiduciary duty to the minority when they utilize a freeze-out merger solely to eliminate minority interests. The allegations in the complaint, and any other facts adverted to, fail to present a material misrepresentation.

Affirmed.