**U.S. BANK N.A., et al., Appellants,**

v.

**COLD SPRING GRANITE COMPANY, et al., Respondents,**

**Patrick D. Alexander, Respondent.**

No. A10–252.

Court of Appeals of Minnesota.

Sept. 14, 2010.

Peter J. Gleekel, Craig S. Krummen, Winthrop & Weinstine, P.A., Minneapolis, MN, for appellants.

William Z. Pentelovitch, Wayne S. Moskowitz, Martin S. Fallon, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for respondents Cold Spring Granite Company, et al.

Joseph W. Anthony, Cheryl A. Stanton, Anthony Ostlund Baer & Louwagie, P.A.,

Minneapolis, MN, for respondent Patrick D. Alexander.

Considered and decided by STAUBER, Presiding Judge; LANSING, Judge; and WORKE, Judge.

## OPINION

WORKE, Judge.

Following a reverse stock split and redemption of appellants' resulting fractional shares of respondent-corporation, appellants asserted this action in district court, seeking judicial valuation of their interest. The district court determined that appellants had no right to a judicial valuation under the Minnesota Business Corporations Act and, accordingly, entered judgment in favor of respondents. We affirm.

## FACTS

Appellants are several trusts—which owned shares of respondent Cold Spring Granite Company (CSG)—and their trustees. Respondents are CSG; its majority shareholder, chairman, and CEO, Patrick D. Alexander; and a spinoff entity, Marble Falls LLC. This dispute arises from the involuntary redemption of appellants' fractional shares following a reverse stock split that caused the fractionalization.

Before the reverse stock split, appellants owned approximately 7% of the Class A common stock in CSG. The majority of CSG's common stock was and is owned either directly or beneficially by Patrick Alexander and other members of the Alexander family. Multiple times, CSG offered to redeem appellants' shares or convert them to preferred shares, which hold no voting rights but on which CSG pays dividends. Appellants repeatedly refused, believing that the offers did not reflect the fair value of the stock.

In connection with the most recent offer to convert appellants' shares, Alexander and other CSG representatives discussed with appellants a plan to create a spinoff entity, to which certain nonoperating real estate would be transferred for tax preferences and liability reasons. The transaction would result in a taxable stock dividend for those who remained common shareholders of CSG. The real estate, valued at more than $10 million in fee simple, would be subject to a 15-year reservation of mineral rights by CSG. Due to that reservation, the land would be valued at $1.95 million for the purpose of determining the tax consequences of the stock dividend. Appellants were advised that, if they did not redeem their shares, they would need to retain their interests in the spinoff entity for 15 years or until the reservation of rights terminated to realize the full value of that investment. After appellants again declined to convert their shares, CSG established the spinoff entity, Marble Falls LLC, and transferred the real estate.

In light of appellants' unwillingness to voluntarily redeem their shares and the CSG board's concerns that minority interests were becoming a distraction, the board sought advice on eliminating minority interests. The board considered and ultimately voted in favor of a reverse stock split and redemption of resulting fractional shares, having been advised that it could effect the transaction without a shareholder vote and that affected shareholders would not be entitled to dissenters' rights. Following the 1–to–7,132.23 reverse split adopted by the board, all non-Alexander-family shareholders, including appellants, owned less than one share and thus their entire interests in CSG became subject to involuntary redemption.

The board hired business appraiser Art Cobb to value CSG shares and another

individual to evaluate Cobb's valuation as well as a valuation obtained by some other minority shareholders in connection with another lawsuit. The board accepted Cobb's valuation and determined, consistent with Cobb's recommendation, to pay shareholders subject to involuntary redemption $986.50 per share held before the reverse split.

Appellants initiated this action, asserting that the fair value of the stock was higher than determined by the board and that they had a right to a judicial valuation under the Minnesota Business Corporations Act (MBCA). The district court assigned the matter to be heard by a special master, who heard testimony and issued findings of facts and conclusions of law and proposed an order for judgment in favor of respondents.

The special master concluded that the reverse stock split and redemption of resulting fractional shares was permitted by the MBCA without a shareholder vote and that the fair value of the redeemed shares determined by the board was conclusive absent fraud. The special master also made valuation findings, adopting most of Cobb's valuation but increasing the value of certain CSG real estate based on market appraisals not available to or not relied on by Cobb. The special master found a value of $1,142.92 per share, but nevertheless recommended denying appellants' request for relief because they had not shown that the board-determined value was fraudulent. The district court adopted the findings and conclusions and ordered judgment in favor of respondents. This appeal follows.

## ISSUES

I. Did the district court err by finding the board's determination of fair value conclusive under Minn.Stat. § 302A.423, subd. 2 (2008)?

II. Did the district court err by denying appellants' request for a dissenters'-rights proceeding under Minn.Stat. § 302A.471 (2008)?

III. Did the district court err by denying appellants' request for judicial intervention to remedy unfairly prejudicial conduct under Minn.Stat. § 302A.751 (2008)?

## ANALYSIS

■ "In the absence of a motion for a new trial, our scope of review includes substantive legal issues properly raised to and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law and the judgment." *Baker v. Baker*, 733 N.W.2d 815, 819 (Minn.App.2007) (citing *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 310 (Minn.2003); *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976)), *aff'd in part, rev'd in part*, 753 N.W.2d 644 (Minn.2008).

■ This appeal requires us to interpret and apply various provisions of the MBCA. Our goal in interpreting statutes is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). If the language of a statute is clear and unambiguous, we apply its plain meaning. *Id.; Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010). If statutory language is ambiguous, "we apply other canons of construction to discern the legislature's intent." *Brua*, 778 N.W.2d at 300 (citing Minn.Stat. § 645.16). Importantly, however, "[w]hen a question of statutory construction involves a failure of expression rather than an ambiguity of expression, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *Genin v.*

*1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn.2001) (quotation omitted).

The dispute in this case arises from action taken by the CSG board to effectuate a reverse stock split and redemption of resulting fractional shares. This two-step transaction is recognized as a method by which majority shareholders can "squeeze out" minority shareholders. *See generally* F. Hodge O'Neal & Robert B. Thompson, *O'Neal & Thompson's Oppression of Minority Shareholders and LLC Members*, § 5:11, at 5–91–96 (Rev.2d ed.2009) (describing reverse-stock-split transaction). Despite this recognition, there is no Minnesota caselaw, and relatively little caselaw from other jurisdictions, addressing the permissibility of the transaction or the remedies available to aggrieved shareholders. *See id.* at 5–92–94 (summarizing caselaw). We address, in turn, appellants' arguments that the district court erred by determining that (1) the board's valuation of their shares was conclusive under Minn. Stat. § 302A.423, subd. 2; (2) appellants were not entitled to dissenters' rights under Minn.Stat. § 302A.471; and (3) appellants were not entitled to relief for unfairly prejudicial conduct under Minn.Stat. § 302A.751.

## I.

The MBCA permits reverse stock splits—referred to in the statute as share combinations—on the action of the board alone unless the split will adversely affect the rights or preferences of holders of outstanding shares or increase the percentage of unissued, authorized shares in any class or series. Minn.Stat. § 302A.402, subd. 2 (2008). The MBCA also permits redemption of fractional shares, unless the redemption "would result in the cancellation of more than 20 percent of the outstanding shares of a class or series." Minn.Stat. 302A.423,

subd. 2. Moreover, an "increase in the percentage of authorized shares remaining unissued arising solely from the elimination of fractional shares" is to be disregarded in determining the permissibility of a board-authorized split. Minn.Stat. § 302A.402, subd. 4 (2008). When a corporation redeems fractional shares, "[a] determination by the board of the fair value of fractions of a share is conclusive in the absence of fraud." Minn.Stat. § 302A.423, subd. 2.

In this case, the district court found that respondents properly redeemed fractional shares amounting to less than 20 percent of a series, and that the fair value determined by the board was conclusive because appellants failed to demonstrate fraud. Appellants argue that the district court erred by finding no fraud, relying on this court's decision in *Sifferle v. Micom Corp.*, 384 N.W.2d 503 (Minn.App.1986), *review denied* (Minn. June 13, 1986). In *Sifferle*, this court "construe[d] the breadth of the term 'fraudulent'" in the context of the dissenters'-rights statute, which limits the remedies of shareholders entitled to relief under that statute to a fair-value buyout unless the " 'corporate action is fraudulent with regard to the complaining shareholder or the corporation.' " *Sifferle*, 384 N.W.2d at 506 (emphasis omitted) (quoting Minn.Stat. § 302A.471, subd. 4). The court concluded that "the [ ] legislature intended the term 'fraudulent' in § 302A.471, subd. 4, to be construed more broadly than strict common-law fraud." *Id.* at 507. Accordingly, we construed the term fraudulent to encompass "deception, misrepresentation, actual fraud, or [a] violation of applicable statutes or articles of incorporation, or [a] violation of a fiduciary duty." *Id.*

Appellants assert that respondents committed *Sifferle* fraud in completing the share combination that fractionalized ap-

pellants' shares. To the extent that appellants challenge the share combination itself, we reject the notion that engaging in conduct expressly permitted by the MBCA, without more, can constitute *Sifferle* fraud. Appellants more specifically assert that respondents committed *Sifferle* fraud by (1) failing to disclose certain management projections and valuations to Cobb and the board; and (2) undervaluing the mineral rights reserved to CSG in the Marble Falls transaction.

The district court found that the failure to disclose management projections was immaterial, and there is evidence to support this finding, including testimony by Cobb that he would not have relied on the projections, and testimony by corporate representatives that the projections were dated and based on an aborted plan to significantly enlarge the business. With respect to the mineral rights, evidence that they were not generating income and were not separately marketable supports the valuation of these rights. Accordingly, we conclude that the district court did not err by finding that the board's valuation was not fraudulent and thus was conclusive.

## II.

■ Appellants assert that, notwithstanding the conclusive effect of the board's valuation under Minn.Stat. § 302A.423, subd. 2, they are entitled to a judicial valuation of their shares under Minn.Stat. § 302A.471, which governs dissenters' rights. Minn.Stat. § 302A.471, subd. 1, provides that "[a] shareholder of a corporation may dissent from, and obtain payment for the fair value of the share-

holder's shares in the event of" certain identified corporate actions.

■ Neither reverse stock splits nor redemptions of fractional shares are among the corporate actions identified as triggering dissenters' rights under the MBCA. Since 1984, the model act, from which the MBCA largely derives, has expressly provided for dissenters' rights upon redemption of fractional shares. *See* Model Bus. Corp. Act § 13.02(a)(4) (2008) (providing for right to appraisal upon "an amendment of the articles of incorporation with respect to a class or series of shares that reduces the number of shares of a class or series owned by the shareholder to a fraction of a share if the corporation has the obligation or right to repurchase the fractional share so created"). But the Minnesota Legislature has not adopted this section. Regardless of whether the legislature's departure from the model act in this respect is intentional or inadvertent, "we may not disregard the clear and unambiguous language of the statute." *Brua,* 778 N.W.2d at 301.

Appellants assert that they are entitled to dissenters' rights because respondents amended the corporate articles in a manner that "materially and adversely affect[ed] the rights or preferences of the shares of the [appellants] in that it ... exclude[d] or limit[ed] the right of a shareholder to vote on a matter," which triggers dissenters' rights under Minn.Stat. § 302A.471, subd. 1(a)(4). But the combination and redemption of appellants' shares did not affect the rights or preferences of those shares, but rather terminated appellants' ownership of them.[1] Moreover, we agree with the district court that

---

1. In this respect, this case in distinguishable from *Whetstone v. Hossfeld Mfg. Co.,* in which the Minnesota Supreme Court held that amendments to corporate articles that eliminated the veto rights of a minority shareholder limited the right of the shareholder to vote within the meaning of the dissenters'-rights statute. 457 N.W.2d 380, 384 (Minn.1990). In *Whetstone,* the shareholder continued to be a shareholder, with the corporate action affecting the rights associated with his shares. *Id.*

adopting appellants' proposed interpretation would nullify the language in Minn. Stat. § 302A.423, subd. 2, treating the board's valuation of fractional shares, absent fraud, as conclusive. *See* Minn.Stat. § 645.17 (2008) (stating presumption that "legislature intends the entire statute to be effective and certain").

We conclude that the district court did not err by denying appellants' request for dissenters' rights under Minn.Stat. § 302A.471 because the plain language of that section does not provide for dissenters' rights in the event that a corporation redeems fractionalized shares following a share combination that causes the fractionalization. In reaching this conclusion, we are mindful of the MBCA's different treatment of squeezed-out minority shareholders depending on how they are squeezed out. Other methods of eliminating minority interests, including merger, typically are subject to both a shareholder vote and dissenters' rights under the MBCA. *See* Minn.Stat. §§ 302A.613 (2008) (addressing circumstances in which shareholder vote is required); 302A.471, subd 1(c) (providing dissenters' rights for mergers with certain exceptions). CSG knowingly elected to effect a share combination and redemption of fractional shares, thereby avoiding both these procedural protections. As is observed by the official comments to the model act, "[t]he reasons for granting appraisal rights in this situation are similar to those [for] granting such rights in cases of cash-out mergers, as both transactions could compel affected shareholders to accept cash for their investment in an amount established by the corporation." Model Bus. Corp. Act. § 13.02 cmt. 1(4).

Despite our concerns, however, we are bound to apply the law as written. *Brua*, 778 N.W.2d at 301. It is up to the legislature, and not this court, to address any inequities arising from this application of the MBCA. *See Beardsley v. Garcia*, 753 N.W.2d 735, 740 (Minn.2008) (declining to adopt interpretation of statute that would amount to revision because "[t]he prerogative of amending a statute in such a fashion belongs to the legislature, not to this court"); *Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks.").

### III.

■ Appellants alternatively assert that they are entitled to judicial intervention to remedy unfairly prejudicial conduct under Minn.Stat. § 302A.751. That section allows a district court to order equitable relief, including a fair-value buyout, in an action by a shareholder when it is shown that "the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders in their capacities as shareholders or directors of a corporation that is not a publicly held corporation, or as officers or employees of a closely held corporation." *Id.*, subd. 1(b)(3). "The legislature enacted section 302A.751 in 1981 in recognition that, given the lack of a ready market for their shares, minority shareholders in closely held corporations required enhanced protections." *Gunderson v. Alliance of Computer Prof's, Inc.*, 628 N.W.2d 173, 184 (Minn.App.2001), *review granted* (Minn. July 24, 2001), *appeal dismissed* (Minn. Aug. 17, 2001).

■ Determining whether conduct is unfairly prejudicial within the meaning of the statute raises issues of fact. *Id.* at 186. The statute does not define unfairly prejudicial conduct, but this court has construed the term to encompass "conduct that frustrates the reasonable expectations

of shareholders in their capacity as shareholders or directors of a corporation that is not publicly held or as officers or employees of a closely held corporation." *Berreman v. W. Publ'g Co.*, 615 N.W.2d 362, 374 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000); *see also Gunderson*, 628 N.W.2d at 184 (Minn.App.2001) (observing that this definition of unfairly prejudicial conduct is consistent with the remedial provision of the statute, "which specifically identifies reasonable expectations as a factor courts must consider in granting relief").

■ In determining whether shareholder expectations are reasonable, deference should be given to written agreements reflecting the parties' intent, but we may also consider "a course of dealing that implies an agreement." *Gunderson*, 628 N.W.2d at 185. "In the absence of specific agreements, reasonable expectations may be determined by reference to the understandings that would normally be expected to result from associative bargaining." *Id.* (quotation omitted).

The district court did not make findings under Minn.Stat. § 302A.751; instead, the court determined that Minn.Stat. § 302A.423, subd. 2, precludes a shareholder whose fractional shares have been redeemed from asserting an action under § 302A.751 absent a showing of *Sifferle* fraud. Although we agree that the language of § 302A.423, subd. 2, precludes construing § 302A.471 to provide dissenters' rights to shareholders whose fractional shares have been redeemed, it is less clear that compliance with § 302A.423, subd. 2, precludes an action for judicial relief under § 302A.751. As we observed above, providing dissenters' rights to a shareholder whose fractional shares have been redeemed would nullify the language in § 302A.423, subd. 2, treating the board's valuation as conclusive absent fraud. In

contrast, the language of § 302A.751 does not directly conflict with § 302A.423, subd. 2, and is meant to be liberally construed to protect the rights of minority shareholders. *Berreman*, 615 N.W.2d at 373.

The broad definition of fraudulent conduct articulated in *Sifferle* substantially coincides with the unfairly prejudicial standard set forth in *Berreman* and *Gunderson*. *Compare Sifferle*, 384 N.W.2d at 507 (defining fraud to encompass "deception, misrepresentation, actual fraud, or [a] violation of applicable statutes or articles of incorporation, or [a] violation of a fiduciary duty") *with Berreman*, 615 N.W.2d at 373, 374 (acknowledging that "[b]reaches of fiduciary duty are probably unfairly prejudicial" and stating reasonable expectations standard). Thus, it would be an unusual case in which a court would find no *Sifferle* fraud but find unfairly prejudicial conduct. Nevertheless, given its broad remedial purpose, we read § 302A.751 to require a separate analysis of whether respondents' conduct was unfairly prejudicial.

■ Ordinarily, a conclusion that the district court failed to make required factual findings dictates remand for further consideration. *See Whitaker v. 3M Co.*, 764 N.W.2d 631, 640 n. 1 (Minn.App.2009) (explaining that "our role as an [appellate] court does not extend to making factual findings in the first instance"). Remand is not necessary in this case, however, because we conclude that respondents' conduct was not unfairly prejudicial as a matter of law. *See Berreman*, 615 N.W.2d at 373 (noting that fully briefed issue need not be remanded); *cf. Gunderson*, 628 N.W.2d at 186 (holding that summary judgment is appropriate on § 302A.751 claim if no rational factfinder could find frustration of reasonable expectations).

Appellants assert that any application of Minn.Stat. § 302A.751 must take into con-

sideration CSG's status as a close corporation, citing statutory language requiring consideration of "the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair, and reasonable manner in the operation of the corporation." Minn.Stat. § 302A.751, subd. 3a. A close corporation is characterized by: "(1) a small number of shareholders; (2) no ready market for corporate stock; and (3) active shareholder participation in the business." *Berreman,* 615 N.W.2d at 367. Although CSG's stock is privately held, there appear to be a significant number of shareholders, in two classes, many of whom have no active role in the business. Nevertheless, we assume for purposes of our analysis here that CSG is a close corporation.

Minn.Stat. § 302A.751 typically is invoked by employee-shareholders who claim a reasonable expectation of continued employment. *See, e.g., Gunderson,* 628 N.W.2d at 189 (noting that "[t]ypical close-corporation shareholders commonly have an expectation of continuing employment with the corporation"). In this case, appellants—who were not employees of CSG—assert frustration of their expectations based on: (1) the involuntary redemption of appellants' shares, despite representations that appellants would be shareholders for at least 15 years and a course of dealing suggesting that respondents would seek only voluntary redemption; (2) the structure of the Marble Falls entity; (3) respondents' failure to provide certain corporate projections to Cobb; and (4) respondents' failure to provide information to appellants to support their own valuation.

We first conclude that appellants did not have a reasonable expectation that they would be long-term shareholders. This conclusion is supported by appellant Ann McCabe's testimony about representations made in relation to explaining the proposed Marble Falls entity; McCabe admitted that the representation was that "if [appellants] decided to be a ... part of [the Marble Falls entity], [they] would be in for 15 years in order to realize [their] value." This admission is consistent with the structure of the Marble Falls transaction, which reserved mineral rights to CSG for 15 years, thus depressing for that period of time the value of the land transferred to the Marble Falls entity.

Likewise unpersuasive is appellants' assertion that the reverse stock split and share redemption frustrated their reasonable expectations because it followed numerous offers for voluntary redemption. The evidence of respondents' repeated attempts to redeem appellants' shares supports the district court's adoption of the special master's finding that appellants "were completely aware of Alexander's desire to acquire their minority interest and concentrate control of CSG and his intent to operate it as a family business." Accordingly, we conclude that appellants did not have a reasonable expectation of long-term retention of their shares.

Nor do any of appellants' remaining allegations rise to the level of unfairly prejudicial conduct. With respect to the Marble Falls transaction, the evidence supports the findings that appellants' ownership interests were equal to their interests in CSG and that the difference between their voting interests—5.57% for Marble Falls versus 6.04% for CSG—was "so small as to be immaterial." And, as noted earlier, the evidence also supports the district court's conclusion that failure to disclose the corporate projections was not material.

Appellants cite to *Berreman* for the proposition that "materiality is not an element of unfairly prejudicial conduct." 615 N.W.2d at 373. But *Berreman* also reasons "that the circumstances would be rare

when a director's failure to disclose immaterial facts would constitute unfairly prejudicial conduct under the statute." *Id.* Like this case, *Berreman* involved allegations of a failure to disclose corporate information to a shareholder. *See id.* at 365–66. And in *Berreman,* although the lack of a materiality element dictated "separate consideration" of the § 302A.571 claim, the court ultimately found that there was no unfairly prejudicial conduct as a matter of law. *Id.* at 373, 375 (determining that appellant "did not have a reasonable expectation that he would be informed of any speculative discussions [the] directors had about the financial future of [the company]"). Similarly, we conclude here that the failure to disclose dated corporate projections did not frustrate appellants' reasonable expectations.

The allegation that respondents failed to disclose corporate financial information to appellants is based on a letter from counsel for CSG *agreeing* to allow appellants to conduct their own valuation of CSG stock, but reserving the discretion to refuse access to information. As respondents point out, shareholders' rights to inspect corporate records are not without limits. *See* Minn.Stat. § 302A.461 (2008) (governing shareholder access to corporate records). Moreover, appellants ultimately conducted their own valuation and do not claim that any information was actually withheld from them. In consideration of all the circumstances, we conclude that respondents' reservation of rights did not frustrate appellants' reasonable expectations as a matter of law.

Because we conclude that the district court properly denied appellants' requests for a judicial valuation, we need not reach appellants' challenges to the court's valuation findings. And we reject appellants' assertions that they are entitled to attorney fees, costs, and interest. Appellants are not prevailing parties and have not been granted relief under the MBCA; accordingly, there is no basis for awarding fees, costs or interest. *See* Minn.Stat. §§ 549.09 (2008) (authorizing interest on judgments); 549.02 (2008), 549.04 (2008) (authorizing costs and disbursements to prevailing parties); Minn.Stat. § 302A.473, subd. 8 (2008) (authorizing costs and fee awards in connection with equitable relief granted under the MBCA); *cf. Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 554 (Minn.2008) (holding that award of costs and fees was not available under the Minnesota Franchise Act absent some other relief granted under the act).

## DECISION

The MBCA permits a corporation to redeem fractional shares following a reverse stock split causing the fractionalization, and the transaction does not give rise to dissenters' rights. Because the reverse stock split and redemption of shares conformed to the MBCA, and because respondents did not engage in unfairly prejudicial conduct as a matter of law, the district court did not err by entering judgment in favor of respondents.

**Affirmed.**

LANSING, Judge (concurring specially).

I concur in the decision of the court, but write separately to emphasize the broad remedial powers available to the district courts under Minn.Stat. § 302A.751 (2008), which applies independently from other provisions of the Minnesota Business Corporations Act, Minn.Stat. §§ 302A.001–.92 (2008). Section 302A.751 was originally enacted in 1981 for the express purpose of providing protection to minority shareholders, particularly those in closely held corporations. *Gunderson v. Alliance of Computer Prof'ls, Inc.,* 628 N.W.2d 173, 184 (Minn.App.2001), *review granted* (Minn.

July 24, 2001) *and appeal dismissed* (Minn. Aug. 17, 2001).

The legislature recognized that, given the lack of a ready market for their shares, minority shareholders in closely held corporations required enhanced protections. *See* Report to the Senate by Advisory Task Force on Corporation law (1981) [Advisory Task Force Report], *reprinted in* Minn.Stat. Ann. § 302A.001 (West supp. 2000) (noting that the Minnesota Business Corporations Act's provisions applicable to closely held corporations are characterized by "greatly enhanced shareholder protections"). The statute has since been amended to strengthen those protections. *See Pedro v. Pedro*, 463 N.W.2d 285, 289 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991).

As this court first observed nearly twenty years ago, Minn.Stat. § 302A.751 provides the flexibility for a trial judge to exercise a broad grant of equitable authority. This authority provides courts with flexibility to provide an adequate remedy for the cases that they must decide. *Id.* at 288–89. Section 302A.751 is remedial in nature and should be liberally construed to supplement the rights under the law afforded to non-controlling shareholders and the corporation's governing documents. The legislation reflects the legislature's trust in the ability of the judiciary to achieve equitable results in individual cases. *Id.*

No part of our decision today should be read to dilute the broad equitable powers afforded to the district courts under section 302A.751. Appellants alleged unfairly prejudicial conduct and sought the equitable remedy of a buy-out under section 302A.751, subdivision 2, with the fair value of their shares determined by the court under that section. Although the proto-

typical minority shareholder claim is asserted by a terminated employee-shareholder, *see, e.g., Pedro*, 463 N.W.2d at 287, the protections afforded by section 302A.751 are sufficiently broad to bring within its ambit non-employee minority shareholders whose shares are involuntarily redeemed. And it is not difficult to envision circumstances in which relief for unfairly prejudicial conduct would be warranted in the context of a reverse stock split followed by redemption of fractional shares. *See, e.g.,* Elliot M. Kaplan & David B. Young, *Corporate "Eminent Domain": Stock Redemption and Reverse Stock Splits*, 57 UMKC L.Rev. 67, 79 (Fall 1988) (noting concern that "majority not manipulate the timing of a freeze-out transaction ... to create an artificially low price for the stock"). Thus, in an appropriate case, a frozen-out shareholder should be able to obtain relief under section 302A.751. We simply hold today that this is not that case.

The availability of equitable relief under section 302A.751 necessarily depends on the particular facts of a case, and on the record in this case we have determined as a matter of law that the conduct alleged by appellants was not unfairly prejudicial. The board of Cold Spring Granite (CSG) observed appropriate corporate formalities in voting on the reverse stock split and the redemption of resulting fractional shares, obtaining an independent appraisal of the corporate shares and holding meetings to discuss the structure of the proposed transaction and the appropriate value to be paid for redeemed shares. Notably, the CSG board had independent directors who questioned the appraiser outside the presence of the interested directors and voted unanimously to approve the transaction. Interested directors abstained from voting on the transaction. As we have concluded

in the majority opinion, the record in this case does not provide adequate support to contend that the conduct of the transaction frustrated appellants' reasonable expectations as shareholders. Accordingly, we conclude they are not entitled to relief under section 302A.751.