**LAKES AREA BUSINESS ASSOCIATION, et al., Appellants,**

v.

**CITY OF FOREST LAKE, et al., Respondents.**

No. A13–0698.

Court of Appeals of Minnesota.

Jan. 27, 2014.

Frederic W. Knaak, Wayne B. Holstad, Holstad & Knaak, P.L.C., St. Paul, MN, for appellants.

James J. Thomson, Kennedy & Graven, Chartered, Minneapolis, MN, for respondents.

Considered and decided by RODENBERG, Presiding Judge; LARKIN, Judge; and CHUTICH, Judge.

## OPINION

CHUTICH, Judge.

On appeal from summary judgment, appellants Lakes Area Business Association, Cameron and Cassandra Piper, and William Anderson contest respondent Forest Lake Economic Development Corporation's issuance of bonds to finance a redevelopment project in Forest Lake. Appellants contend that an election should have been held before the bonds were issued. Because the bonds were revenue bonds issued by an economic development authority, and because an economic development authority is not required to follow Minnesota Statutes section 475.521 (2012) before issuing revenue bonds to finance capital improvements, we affirm.

## FACTS

In 2007, the City of Forest Lake (city) began considering whether to relocate its city hall and public-safety building. On November 7, 2012, the city, the Forest Lake Economic Development Corporation (referred to by respondents as the Forest Lake Economic Development Authority (the Forest Lake Authority)), and Pace

Development, Inc. (Pace) entered into a development agreement. Under the agreement, the Forest Lake Authority purchased certain real property from Pace "for the purpose of constructing and thereafter leasing to the City a multipurpose municipal facility." The property includes most of Northland Mall, a largely vacant strip mall located south of downtown Forest Lake.

The Forest Lake Authority planned to demolish the existing structure, construct a city hall and public-safety facility, and sell three of the lots for private commercial development. According to Aaron Parrish, the city administrator, the Forest Lake Authority "issued revenue bonds that were secured by a lease with the City to support the debt service on the bonds" in the approximate amount of $22.5 million, $1.95 million of which was used to purchase the property. The balance of the bond proceeds was to be used to develop, design, and construct the redevelopment project.

On December 21, 2012, the city received from appellant Cameron Piper a "petition requesting vote on bonds" that contained the signatures of Forest Lake residents. The petition states:

> We, the undersigned eligible voters of the City of Forest Lake, pursuant to Minnesota Statutes [section] 475.521, request a vote on the issuance of bonds in the amount of no more than [$22.5 million] to finance the acquisition of land and improvements for and construction of a city hall and public s[a]fety building.

The city did not act on the petition. On that same day, the Forest Lake Authority closed on the purchase of the property.

On February 19, 2013, appellants filed a complaint in district court. Count one alleged that "the actions of the City, in conjunction with the [Forest Lake Author-

ity] in their common scheme [ ] to purchase the Mall without permitting a referendum demanded by citizens in the City as provided by law is illegal and contrary to Minnesota law." Count two asserted that the "actions of the City and the [Forest Lake Authority] have immediately and directly injured the Plaintiff individual taxpayers and other taxpayers in the City by spending, for improper and illegal reasons, public funds for the benefit of individuals and not the City as a whole." Appellants requested a declaratory judgment that (1) "the City must receive the petition demanding a referendum on the question of bonding" and (2) "the property in question was not ... legally qualified to receive funds from any bonding proceeds of the [Forest Lake Authority]."

Shortly after filing their answer, the city and the Forest Lake Authority moved for an order requiring appellants to post a surety bond as security for any potential loss or damage "as a condition of proceeding with its current claims." The parties appeared for a hearing on this motion, at which they also argued the substantive issues of the case. Respondents contended that the revenue bonds were issued under statutory authority that does not require a referendum to be held.

The district court determined that the key issue was whether respondents could build a public-safety facility and city hall without first getting voter approval. The district court ultimately held that the two bonding statutes at issue do not conflict, and it allowed the Forest Lake Authority to issue bonds and to proceed with the project without an election. The district court granted summary judgment to respondents, denied appellants' request for declaratory judgment, and denied respondents' motion for a surety bond.

This appeal followed.[1]

## ISSUES

I. Do the election requirements of Minnesota Statutes section 475.521 apply to the Forest Lake Authority's issuance of revenue bonds?

II. Does the Forest Lake Authority have the power, under Minnesota Statutes section 469.103, to issue revenue bonds without holding an election?

## ANALYSIS

We review de novo a district court's summary-judgment decision. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). In reviewing the record, we determine whether genuine issues of material fact exist and whether the district court properly applied the law. *Dahlin v. Kroening,* 796 N.W.2d 503, 504 (Minn.2011). We "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Appellants contend that the district court incorrectly applied the law because Minnesota Statutes section 475.521 exclusively applies to bonds issued to finance capital improvements, which are defined to include construction of the city hall and public-safety facility, and that the statute requires an election to be held before the Forest Lake Authority issued the bonds. *See* Minn.Stat. § 475.521 (2012). Respondents assert that the Forest Lake Authority issued a different type of bond—revenue bonds—under the statutory power of section 469.103 and that, even if the rede-

velopment project meets the definition of a capital improvement in section 475.521, the Forest Lake Authority was not obligated to finance it using capital-improvement bonds. *See* Minn.Stat. § 469.103 (2012).

The parties' argument thus centers on which of two separate statutory provisions applies to the redevelopment project: the capital-improvements-bond statute in chapter 475 or the revenue-bond statute in chapter 469. The capital-improvements-bond statute provides that bonds issued by a municipality for defined capital improvements are subject to election requirements unless a specified exception exists. *See* Minn.Stat. §§ 475.521, .58 (2012). The revenue-bond statute, by contrast, allows economic development authorities to issue revenue bonds, which are not a debt of the authority's city, without any election requirements. *See* Minn.Stat. § 469.103.

■ We must look to statutory authority to determine this dispute. "Generally, municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred." *State v. Kuhlman,* 729 N.W.2d 577, 580 (Minn. 2007) (quotation omitted).

■ "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). When the language as applied is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Amaral v. Saint Cloud Hosp.,*

---

1. By notice of related appeal, respondents City of Forest Lake and the Forest Lake Authority assert that, if this court reverses the summary-judgment decision, the matter should be remanded to the district court for a determination on their motion for a surety bond. Because we affirm the summary-judgment dismissal of appellants' claims, we need not reach respondents' arguments regarding the surety bond.

598 N.W.2d 379, 384 (Minn.1999). "Under basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature." *Id.* "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16.

Because appellants claim that section 475.521 applies exclusively to the bonds issued, we analyze that section first and then turn to the question of whether the Forest Lake Authority may issue revenue bonds under chapter 469. For the reasons set forth below, we conclude that section 475.521 does not set forth the exclusive procedure for issuing bonds that are to be used to finance the construction of public facilities and that the Forest Lake Authority properly issued the bonds under chapter 469.

## I. Capital–Improvement Bonds Under Section 475.521

■ Minnesota Statutes section 475.521 provides the procedure for a municipality to issue capital-improvement bonds. "Capital improvement" means "acquisition or betterment of public lands, buildings or other improvements for the purpose of a city hall, town hall, library, public safety facility, and public works facility." Minn. Stat. § 475.521, subd. 1(b). Appellants rely on two provisions of section 475.521 that contain voting requirements to assert that respondents cannot bypass an election to authorize public expenditures for capital improvements.

First, subdivision 2(a) refers to a separate voting requirement in section 475.58

and contemplates that, under section 475.58, capital-improvement bonds must be approved by "a majority of the electors voting on the question of issuing the obligations" *unless* the bonds are issued under "an approved capital improvements plan." [2] Minn.Stat. §§ 475.521, subd. 2(a), .58. Second, subdivision 2(c) provides that a certain percentage of voters may petition to request a vote on the issuance of the capital-improvement bonds and that a municipality "may issue the bonds only after obtaining the approval of a majority of the voters voting on the question of issuing the obligations." Minn.Stat. § 475.521, subd. 2(c).

In addition, appellants rely on subdivision 5, which provides that "[b]onds to finance capital improvements qualifying under this section must be issued under the issuance authority in this chapter and the provisions of this chapter apply, except as otherwise specifically provided in this section." *Id.*, subd. 5.

Citing these provisions, appellants contend that (1) construction of a city hall and a public-safety building is a "capital improvement"; (2) the city has not enacted an approved "capital improvements plan" and thus cannot circumvent the voter-approval requirements of section 475.58; (3) appellants further satisfied the petition requirements of subdivision 2(c) for a "reverse referendum"; and (4) subdivision 5 provides that bonds to finance capital improvements must be issued under this chapter. Contrary to appellants' reading of the statute, however, the plain language of section 475.521 does not require the challenged redevelopment project to be financed only according to the section's requirements.

**2.** Section 475.58 states, in relevant part, that "[o]bligations authorized by law or charter may be issued by any municipality upon obtaining the approval of a majority of the electors voting on the question of issuing the

obligations." Minn.Stat. § 475.58, subd. 1 (2012). Other exceptions to this voting requirement, found in section 475.58, are not relevant here. *See id.*, subd. 1(1)-(10).

First, even assuming that the redevelopment project is a "capital improvement" within the meaning of the statute and that the city has no approved "capital improvements plan" to excuse it from the election requirements of section 475.58, the plain language of section 475.521 establishes that it does not apply to the entity that actually issued the bonds here: the Forest Lake Authority. Subdivision 2 makes clear that the election requirements apply to "a municipality." Minn.Stat. § 475.521, subd. 2. And subdivision 1(c) defines a "municipality" as "a home rule charter or statutory city or a town." *Id.*, subd. 1(c). The Forest Lake Authority does not meet that definition. By its terms, section 475.521 only governs the actions of municipalities.

Second, appellants' reliance on subdivision 5 is misplaced. Subdivision 5 applies only to bonds to finance capital improvements *"qualifying under this section."* *Id.*, subd. 5 (emphasis added). Appellants do not explain how the bonds at issue here qualify under section 475.521 when they were not issued by a municipality.

We conclude that section 475.521, by its terms, applies only when a municipality issues bonds to finance capital improvements and does not apply to an economic development authority. Because appellants assert that the Forest Lake Authority does not have the authority to issue bonds for capital improvements under the economic development statute, we next examine chapter 469 to determine whether it provides such authorization. We conclude that it does.

## II. Chapter 469 Governing Economic Development and Economic Development Authorities

### A. General Powers of Economic Development Authorities

A city may establish an economic development authority and grant it certain powers. Minn.Stat. § 469.091, subd. 1 (2012). These powers include those granted specifically to economic development authorities; the powers of a housing and redevelopment authority; and the powers of a city as related to city development districts. *Id.* An economic development authority is a separate entity from a municipality. *Id.*, subd. 2 (2012) ("An economic development authority is a public body corporate and politic and a political subdivision of the state with the right to sue and be sued in its own name. An authority carries out an essential governmental function when it exercises its power, but the authority is not immune from liability because of this.").

Minnesota Statutes section 469.101 (2012) delineates the broad powers granted to economic development authorities. For example, an economic development authority may purchase property, enter into contracts with any of the state's political subdivisions, enter into construction contracts, operate public facilities, and so forth. *Id.* Contrary to appellants' claim, the section does not prevent the Forest Lake Authority from purchasing land, constructing the redevelopment project, or issuing bonds to finance the project. *See id.*

### B. The Power to Issue Revenue Bonds

Respondents claim that the bonds the Forest Lake Authority issued were "lease-purchase revenue bonds" issued under Minnesota Statutes section 469.103. Appellants do not contest that the Forest Lake Authority issued revenue bonds.

An economic development authority is authorized to issue general-obligation bonds under section 469.102 and revenue bonds under section 469.103. Minn.Stat. §§ 469.102, .103 (2012). Revenue bonds

may be issued to provide money to pay to acquire land needed to operate the authority, to purchase or construct facilities, to purchase, construct, install, or furnish capital equipment to operate a facility for economic development of any kind within the city, or to pay to extend, enlarge, or improve a project under its control.

Minn.Stat. § 469.103, subd. 1. These revenue bonds "are not a debt of the authority's city nor a pledge of that city's full faith and credit" and are only payable from project revenue. *Id.*, subd. 6.

By its plain language, section 469.103 does not prevent an economic development authority from issuing revenue bonds to finance the type of redevelopment project here, which involves demolishing the existing structure, constructing a public-safety facility and city hall, and selling three of the lots for private commercial development. *See* Minn.Stat. § 469.103. Section 469.103 also does not require an election to be held before an economic development authority issues the revenue bonds. *Id.*

In contrast, general-obligation bonds issued by an economic development authority "must be secured by the pledge of the full faith, credit, and resources of the issuing authority's city." Minn.Stat. § 469.102, subd. 4. Tellingly, an economic development authority's issuance of general-obligation bonds "is governed by chapter 475" and the authority, when it issues these types of bonds, "is a municipal corporation under chapter 475." *Id.*, subd. 1.

No such limiting language applies to an economic development authority's issuance of revenue bonds. If the legislature had wanted the provisions of chapter 475 to cover revenue bonds issued under section 469.103, it certainly could have included a similar statement in the statutory provisions authorizing the issuance of revenue bonds. *See In re Hubbard*, 778 N.W.2d

313, 323 (Minn.2010) (holding that, where express authority is given in one statute and not in another, the legislature shows it "knows how to grant such authority if it desires"); *Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks."). Because the bonds here were revenue bonds issued by the Forest Lake Authority, the bonds were properly issued without holding an election.

Appellants assert, without citing authority, that section 469.103 cannot apply because "[t]here cannot be revenue generated from the public buildings contemplated in this development without general taxpayer funding" and that the funding mechanism here will force the city to increase taxes. But because the bonds here are revenue bonds issued by the Forest Lake Authority, the city does not incur a general obligation or debt.

To be sure, the revenue bonds here are financed by a lease with the city. But nothing in the relevant statutes prohibits such an arrangement. Section 469.103 gives the Forest Lake Authority the power to secure the payment of the principal and the interest on the bonds "with its promise to impose, maintain, and collect enough rentals, rates, and charges, for the use and occupancy of the facilities." Minn.Stat. § 469.103, subd. 5. "The revenue must come from the facility to be acquired, constructed, or improved with the bond proceeds or from other facilities named in the bond-authorizing resolutions." *Id.*

In addition, appellants have not shown that the city is obligated to increase taxes to pay the lease. Respondents assert that, on an annual basis, the city may choose *not* to appropriate funds to pay rent under the lease. The Forest Lake Authority—

an entity that is separate from the city— issued the bonds and is obligated to pay the principal and interest, regardless of whether the city makes the lease payments.

Appellants contend that the election requirements of chapter 475 will be rendered "meaningless" if the city can "circumvent" a referendum by creating a scheme that allows the Forest Lake Authority to issue bonds for a new city hall and public-safety building without holding an election. Respondents reply that the two statutory provisions are complementary and provide cities with different tools for financing different kinds of public facilities. Respondents note, for example, that section 475.521 allows cities to use general-obligation bonds that carry lower interest rates than lease-purchase revenue bonds, but that revenue bonds can be used to construct projects that include more than the specified types of public facilities identified as "capital improvements" in section 475.521. *Compare* Minn.Stat. § 475.521, subd. 1(b), *with* Minn.Stat. § 469.103, subd. 1.

Because the plain language of sections 469.103 and 475.521 provide alternative financing mechanisms that are not mutually exclusive, neither section is made meaningless by the use of the other. Moreover, given the unambiguous language of the statutes, appellants' policy concern that taxpayers should have input before new public facilities are built should be addressed to the legislature. *See U.S. Bank N.A. v. Cold Spring Granite Co.,* 788 N.W.2d 160, 166 (Minn.App.2010) (stating that the court of appeals is "bound to apply the law as written"), *aff'd,* 802 N.W.2d 363 (Minn.2011); *Lino Lakes Econ. Dev. Auth. v. Reiling,* 610 N.W.2d 355, 359 (Minn.App.2000) (holding that, even where party has legitimate concern about the effect of statute, "it is the legislature's role, not this court's, to correct that problem").

### DECISION

We conclude that sections 469.103 and 475.521 provide alternative financing mechanisms that are not inconsistent. The election requirements of section 475.521 do not apply to an economic development authority that issues revenue bonds to finance a capital improvement. Moreover, section 469.103 on its face authorizes an economic development authority to issue revenue bonds to finance a capital-improvement redevelopment project without holding an election.

**Affirmed.**